[Civil No. 3669. Filed April 6, 1936.]

[56 Pac. (2d) 667.]

WEBER SHOWCASE & FIXTURE COMPANY, INC., a Corporation, Appellant, v. CO–ED SHOP, a Corporation, Appellee, and OFFICE BUILDING COMPANY, a Corporation, Intervener.

Mr. John W. Ross, for Appellant.

Mr. Alexander Murry, for Appellee.

Messrs. Knapp, Boyle & Thompson, for Intervener.

LOCKWOOD, C. J.—This is an action brought by Weber Showcase & Fixture Company, Inc., a corporation, hereinafter called plaintiff, against Co-ed Shop, a corporation, hereinafter called defendant, to recover certain store fixtures which plaintiff claimed it owned and was entitled to the immediate possession of. The Office Building Company, a corporation, intervened, claiming a landlord's lien upon the fixtures, but we need not consider it for the purpose of this appeal. The case was tried to the court, sitting without a jury, and judgment was rendered in favor of defendant, whereupon this appeal was taken.

The matter comes before us on a stipulation of facts, and we may summarize them as follows: The plaintiff is a corporation organized under the laws of Delaware, with its prinicpal place of business in Los Angeles, California. It also, however, maintains an office and place of business in Maricopa county, Arizona, and has appointed a statutory agent for that county, and had issued to it by the Corporation Commission a license to do business in all counties where it had such an agent, and has paid its annual fees for such license, as required by law. It has never, however, appointed a statutory agent for Pima county.

On the 25th of July, 1930, plaintiff sold to one C. M. Fruitman certain office fixtures, being substantially the same as those involved in the present action, under a conditional sales contract, the material portions of which read as follows:

"To Weber Showcase & Fixture Co., Inc., Los Angeles, Calif., 5700 Avalon Blvd., Los Angeles, Calif.

"You are hereby requested to furnish and deliver to the undersigned f. o. b. your factory, Los Angeles, the following, subject to acceptance by your home office and upon acceptance to become binding contract, subject to the terms and conditions set forth on this page and on the reverse side hereof. . . .

"Weber to install.

"Terms: $500.00 check herewith dated August 15th, 1930, $485.00 due when fixtures ready to ship and the balance of $2544.00 twenty-five hundred forty-four no/100, closed by 24 equal monthly non-interest bearing notes—notes dated Sept. 15, 1930; and mature consecutively each month thereafter. Notes to bear interest at rate of 8% after maturity."

It was further provided that in case of failure to pay the installments as set forth in the contract, the plaintiff might terminate the contract and take immediate possession of the property, retaining any amounts paid thereon as compensation for use and depreciation. In accordance therewith, plaintiff shipped the goods in question to Fruitman, in Pima county, and its employees and agents installed them in the place of business then being conducted by him. Fifteen hundred dollars was paid on the contract by him, and by the defendant which later succeeded to all of Fruitman's interest in the property and assumed the liability on the contract, but payments of nearly $2,000 being greatly in arrears, plaintiff demanded possession of the property. This was refused by defendant, whereupon this suit was brought.

The pleadings of defendant set up four defenses, but only one is involved on this appeal, and that is whether or not, in view of plaintiff's admitted failure to qualify to do business in Pima county in the manner provided by our statute, it is precluded from

maintaining this action, under section 658, Revised Code of 1928, which reads as follows:

"*Acts void unless statutes complied with.* No foreign corporation shall transact any business in this state until it has complied with the requirements of the preceding section, and every act done by said corporation prior thereto shall be void."

It is the contention of plaintiff that the contract and transaction on which its claim to ownership of the property involved herein is based was an interstate commerce transaction and, as such, did not fall within the inhibition of our statute, and, second, that even if it did, while it might not enforce the contract itself, it could recover possession of its property, the title to which had never passed to defendant.

So far as the first question is concerned, it is, of course, true that if the transaction in question was purely an interstate one, no state legislation could affect its validity, nor could our legislature forbid it access to the state courts for the purpose of enforcing any rights which might arise out of the transaction. The real question, therefore, is, Was the transaction an interstate or intrastate one? We are, of course, bound by the decisions of the Supreme Court of the United States on all questions involving interstate commerce. Apparently the three cases which come nearest to the present one in their facts are those of *Browning* v. *Waycross*, 233 U. S. 16, 34 Sup. Ct. 578, 58 L. Ed. 828, *General Ry. Signal Co.* v. *Virginia*, 246 U. S. 500, 38 Sup. Ct. 360, 62 L. Ed. 854, and *York Mfg. Co.* v. *Colley*, 247 U. S. 21, 38 Sup. Ct. 430, 62 L. Ed. 963, 11 A. L. R. 611. At first glance it would seem difficult to reconcile the reasons and conclusions reached by that august tribunal in the three cases, and many of the state courts have differed in their conclusions as to what the test of interstate

commerce laid down by these decisions was. We are of the opinion that on comparing the opinions carefully, there is a general rule apparent and running through them. It may be thus stated,

"If the particular provision in the contract for the assembly and erection at the point of destination of the goods sold was a *relevant and appropriate* part of the sale, the entire transaction is one of interstate commerce."

In applying this rule to the facts of any particular case, we should consider primarily whether the work performed was necessary to put the goods sold into condition for the use for which they were destined, or was work over and above that required by the inherent nature of the subject-matter of the sale. Applying this test to the present case, we think the answer is plain. Goods of the character in question are almost invariably shipped knocked down, and require assembly and installation before they are of the slightest use to the purchaser. This work can be done far better, more expeditiously and cheaper by the agents and employees of the manufacturer than it can possibly be done by workmen who are not perfectly familiar with the goods. We think that in contracts of this nature, an agreement to assemble and install the fixtures is "a relevant and appropriate part of the sale." See, also, *Citizens' Nat. Bank* v. *Buckheit,* 14 Ala. App. 511, 71 So. 82; *Puffer Mfg. Co.* v. *Kelly,* 198 Ala. 131, 73 So. 403; *United Iron Works Co.* v. *Watterson Hotel Co.,* 182 Ky. 113, 206 S. W. 166; *Hess Warming & Ventilating Co.* v. *Burlington Grain Elevator Co.,* 280 Mo. 163, 217 S. W. 493; *Mergenthaler L. Co.* v. *Hays,* (Mo. App.) 181 S. W. 1183; *Wolf Co.* v. *Kutch,* 147 Wis. 209, 132 N. W. 981; *J. L. White Furnace Co.* v. *C. W. Miller Transfer Co.,* 131 App. Div. 559, 115 N. Y. Supp. 625.

It follows that since the entire transaction was one in interstate commerce, our statute does not and cannot apply thereto, and that being the case, plaintiff was entitled to maintain its action for possession, notwithstanding its failure to appoint a statutory agent for Pima county. We need not consider, therefore, the other question raised on the appeal.

The judgment is reversed and the case remanded, with instructions to sustain the demurrer to the fourth defense, and for further proceedings in accordance with this opinion.

McALISTER and ROSS, JJ., concur.