**PEPPER & TANNER, INC., a corporation aka Pepper Sound Studios, Inc., acting in its own name and through its division Mars Merchandising Company, Plaintiff-Appellant,**

v.

**SHAMROCK BROADCASTING, INC., a corporation, doing business as Station KRIZ, also known as KRIZ, Radio Station KRIZ and KRIZ Broadcasting Station, Defendant-Appellee.**

No. 74–2090.

United States Court of Appeals, Ninth Circuit.

Oct. 18, 1977.

---

Robert W. Holland, Carson, Messinger, Elliott, Laughlin & Ragan, Phoenix, Ariz., Louis R. Lucas, Ratner, Sugarmon & Lucas, Barbara B. Dickey, G. Philip Arnold, Memphis, Tenn., for plaintiff-appellant.

Mark I. Harrison, Noel K. Dessaint, Harrison, Myers & Singer, Phoenix, Ariz., for defendant-appellee.

Before MERRILL, HUFSTEDLER and KENNEDY, Circuit Judges.

KENNEDY, Circuit Judge:

Appellant Pepper & Tanner, Inc., a Tennessee corporation, brought this diversity action against appellee Shamrock Broadcasting, Inc., an Arizona corporation doing business as Radio Station KRIZ (KRIZ), to recover on four contracts allegedly breached by KRIZ. Following discovery, the court entered a pretrial order which, among other things, incorporated a stipulation of facts. Thereafter, KRIZ moved to amend its answer and to dismiss the complaint. The court granted leave to amend, and, treating the motion to dismiss as a motion for summary judgment, pursuant to Fed.R. Civ.P. 12(b), granted summary judgment in favor of KRIZ. Summary judgment was entered accordingly and Pepper & Tanner appeals. We reverse.

The district court granted summary judgment on the premise that Pepper & Tanner was barred from recovery on each of the four contracts because it had failed to qual-

ify to do business in Arizona. Arizona's General Corporation Law provides:

No foreign corporation shall transact business in this state until it has complied with the requirements of § 10–481 [relating to qualifications], and every act done prior thereto is void.

Ariz.Rev.Stat. § 10–482 (1956).[1]

The statute is relevant to the validity of only such contracts as Pepper & Tanner made while transacting business in Arizona. Therefore, if in fact Pepper & Tanner ever did commence transacting local business, the statute might be applicable to some of the four contracts on which the plaintiffs grounded their claims but not to others. Furthermore, if it is determined that the Arizona statute did apply to one or more of the contracts, it would then be necessary to inquire whether on the particular facts presented the statute's declaration of contractual invalidity was consistent with the commerce clause of the Constitution.

■ The entry of summary judgment necessarily implied a determination that, based on the record before the court as construed in favor of the plaintiff, it could be said as a matter of law that (1) Pepper & Tanner was transacting business in Arizona at the time each of the contracts was made and (2) the Arizona statute as applied to these transactions did not violate the commerce clause. These ultimate issues of statutory coverage and constitutionality depend upon a precise and detailed factual inquiry. Yet a grant of summary judgment requires a determination by the trial court that no genuine issue of material fact is presented. Fed.R.Civ.P. 56(c). The trial court may not enter a summary judgment which rests on a chain of inferences from subsidiary facts not conclusively established in the record. On a motion for summary judgment neither we nor the trial courts are permitted to weigh the evidence, pass upon credibility, or "speculate as to ultimate findings of fact." *Fortner Enterpris-*

*es, Inc. v. United States Steel,* 394 U.S. 495, 506, 89 S.Ct. 1252, 1260, 22 L.Ed.2d 495 (1969).

■ The record on which the trial court granted summary judgment consisted of (1) a stipulation of facts in the pretrial order which superseded all prior pleadings and controlled the subsequent course of the action, Fed.R.Civ.P. 16; (2) a number of depositions and sworn statements filed with the court; and (3) the amended answer, filed by leave of court after the pretrial order was entered. In determining whether or not a grant of summary judgment was proper we are not bound by the usual rule requiring an appellate court to accept the findings of a trial court unless they are clearly erroneous. 5A Moore's Federal Practice ¶ 52.08, at 2734 n.3 (2d ed. 1975). Mindful of this standard of review we conclude that this record does not contain sufficient facts on which the trial court could rest its ruling that the Arizona statute invalidated each of the four contracts at issue. Therefore we reverse.

In finding, as we do, that the effect of the Arizona statute is yet in doubt, we must avoid the temptation, indulged in by the trial court and by both parties on this appeal, to plunge directly into the question of whether the sanction of invalidity violates the commerce clause of the Constitution. If on remand the facts are established to show that the Arizona statute bars recovery on any of the contracts, then and only then the constitutional question must be confronted. If the facts found are as alleged in appellant's brief, the constitutional question raised is a serious one, and the trial court will have the opportunity resolve it in light of the Supreme Court's decision in *Allenberg Cotton Co. v. Pittman,* 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974), a case decided after the trial court entered its judgment.

To illustrate that the record is inadequate to support a determination that the four

---

1. This section, along with several other provisions of the Arizona Corporations Law relating to foreign corporations, was repealed by An Act Relating to Corporations, ch. 69, 1975 Ariz. Sess.Laws 244 (effective July 1, 1976). The subject matter of the repealed statute is now covered by Ariz.Rev.Stat. §§ 10–106, 10–121 & 10–124 (Supp. III 1975).

contracts were invalid, it is necessary to discuss the scope of the Arizona statute. Even a brief study of Arizona authorities indicates that, perhaps from a wholesome desire to avoid brushing up against the commerce clause or because of the very harshness of the statute itself, the Arizona courts have strictly construed the concept of transacting business. In *Monaghan & Murphy Bank v. Davis*, 27 Ariz. 532, 234 P. 818 (1925), the court had little difficulty in finding the Arizona statute inapplicable to a foreign corporation which executed within the state of Arizona a chattel mortgage on Arizona property. The *Monaghan* case and previous holdings were summarized by the court in *McKee v. Stewart Land & Live Stock Co.*, 28 Ariz. 511, 238 P. 326 (1925), in the following manner:

> We have held in four different cases "that to come within the statute a corporation must be engaged in an enterprise of some permanence and durability and must transact within the state some substantial part of its ordinary business, and not merely a single act."

*Id.* at 512–13, 238 P. at 327.

The Arizona authorities were reviewed by this court in *Worcester Felt Pad Corp. v. Tucson Airport Authority*, 233 F.2d 44 (9th Cir. 1956). In that case we held the Arizona statute inapplicable to the execution of a lease for Arizona realty on the ground that the lease was "incidental and preliminary" to doing business. We indicated that the state statute was to be construed independently of the constitutional power of the state to regulate the doing of business by a foreign corporation. *Id.* at 49.

In *Weber Showcase & Fixture Co. v. Co-ed Shop*, 47 Ariz. 415, 56 P.2d 667 (1936), the corporation in question had an office in Arizona. Nevertheless the court ruled that the qualification statute did not apply. In finding that there was no local business activity, the *Weber* court discussed the Arizona statute in terms of interstate commerce. The case may not be interpreted, however, as a holding that the reach of the Arizona statute and the constitutional power of the state to regulate are coextensive.

Previous Arizona cases, our decision in *Worcester Felt Pad*, and an analysis of the ultimate holding in *Weber* persuade us that the threshold test of local business under the Arizona qualification statute requires that the foreign corporation be doing a substantial, continuous business in Arizona. More recent cases affirm the foregoing principles. *Norman v. Del Elia*, 111 Ariz. 480, 533 P.2d 537 (1975); *Ranch House Supply Corp. v. Van Slyke*, 91 Ariz. 177, 370 P.2d 661 (1962); *Rochester Capital Leasing Corp. v. Sprague*, 13 Ariz.App. 77, 474 P.2d 201 (1970); *Neiderhiser v. Henry's Drive-In, Inc.*, 96 Ariz. 305, 394 P.2d 420 (1964).

Applying these authorities to the judgment entered below and to the record before us, we cannot agree that enough facts are shown to establish conclusively that the Arizona statute relied on below applies to each of the contracts here in question. Of the thirty paragraphs contained in the stipulation of facts, only six can in any sense be considered relevant to the issue. Since these fairly well sum up the evidence before the trial court, we set them forth in full:

23. The plaintiff is a Tennessee corporation. Plaintiff was not licensed to do business in Arizona as a foreign corporation pursuant to A.R.S. § 10–481 at the time the contracts in question were entered into or at any time.

24. That at least since 1965 one or more of plaintiff's agents and employees have traveled into Arizona for the purpose of acquiring advertising time on Arizona radio stations.

25. Zack I. Hernandez, an employee of Pepper & Tanner, negotiated for the acquisition of radio advertising time for Pepper & Tanner in Arizona between 1964 and 1971 and negotiated and obtained in Arizona the contracts with KRIZ dated November 13, 1964 and December 3, 1965.

26. Employees of the plaintiff met in Arizona with KRIZ personnel during the period between November, 1964 and February 28, 1966, for the purpose of obtaining local advertising customers for KRIZ; that plaintiff's employees did in fact call

on various businesses for the purpose of having those businesses buy advertising time on KRIZ; that plaintiff's employees together with KRIZ personnel, did in fact obtain orders for advertising time on KRIZ from the following local businesses: Arizona Valley [sic], Bob Fox Department Store, Charlie Chase Tire Co., Darner Chrysler-Plymouth, Mike's Western Store, Regal Service Stations and What-A-Burger.

27. The place of performance of all contracts by the defendant was in Phoenix, Arizona; all advertising time acquired by the plaintiff on KRIZ was to be aired from Phoenix, Arizona; and Shamrock did, in fact, provide advertising time at the plaintiff's request during the period of November 13, 1964 to approximately July, 1966, and for possibly a longer period of time pursuant to valid broadcast orders and time assignments.

28. That the four contracts in question were negotiated and obtained by plaintiff in the course of and as part of its ordinary business and that the business activities of the plaintiff as described in paragraphs 24 through 26 above, were also performed in the course of and as part of its ordinary business.

This stipulation, and the balance of the record in the case, do not support the trial court's ruling under applicable principles of Arizona law. To begin with, the record is wholly devoid of any showing of the ratio between the overall business of Pepper & Tanner and the portion of its business attributable to its activities in Arizona. Moreover, the trial court's statement that one or more of plaintiff's agents and employees traveled to Arizona to acquire advertising time is wholly consistent with the inference that Pepper & Tanner relied on interstate salesmen to initiate and service its contracts, and that it was not doing a substantial, continuous business in Arizona. Indeed, the record indicates that the Pepper

& Tanner employee who negotiated the contracts in question covered a territory consisting of a number of western states.

 The conclusion that a contract was "obtained in Arizona" is different from a determination that all of the parties executed a contract in Arizona or that the laws of that state govern its validity. The district court did not address these more important determinations.[2] Furthermore, the trial court's conclusion that KRIZ's contract performance was in Arizona is not dispositive of the character of Pepper & Tanner's business in Arizona. The operations of Pepper & Tanner are the principal subject for inquiry, and there is no claim that KRIZ was Pepper & Tanner's agent.

 The trial court concluded that representatives of Pepper & Tanner were "constantly in Arizona," and from that that Pepper & Tanner was transacting business there. While suitable inferences may be drawn by the trial court in ruling on a motion for summary judgment, all such inferences are to be drawn against the moving party. *United States v. Diebold Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (*per curiam*); *Driscoll v. United States*, 525 F.2d 136 (9th Cir. 1975). The trial court's memorandum essentially follows the reverse procedure by drawing the inferences in favor of the moving party. In addition, the Arizona courts have placed the burden of establishing the transaction of business within the meaning of the statute upon the party seeking to avoid the transaction. *National Union Indemnity Co. v. Bruce Bros.*, 44 Ariz. 454, 38 P.2d 648 (1934); *Monaghan & Murphy Bank v. Davis*, 27 Ariz. 532, 234 P. 818 (1925). The defendant's showing in support of its motion for summary judgment does not meet this burden.

As for the legal issues, it seems that the court reversed the usual presumption by

---

2. The record seems to indicate that at least some of the contracts were negotiated and executed outside of Arizona. We think the place of making the contracts bears on the applicability of the statute even if it is not determina-

tive. Arizona cases seem to shed no light on the point. Confusion in the existing record on this issue is yet another reason why the case is not ripe for summary judgment.

construing the Arizona statute in a manner that raises a serious constitutional question. At best, Arizona decisions leave a gray zone between, on the one hand, isolated or preliminary transactions and, on the other, conduct on an established basis of a substantial part of a corporation's business. Neither court nor counsel have cited, and we have not found, an Arizona case applying the statute to circumstances such as those presented by the rather skimpy record in this case. In view of the general attitude toward the statute displayed by the Arizona courts, we have serious doubts that they would concur with the rulings of the district court in this case.

The questions here are mixed questions of law and fact and, on this record, that is sufficient to preclude summary judgment. It necessarily follows that before there can be a disposition of this case, further proceedings are required, either by development of additional undisputed facts or by trial. We therefore vacate the judgment and remand the case for further proceedings consistent with this opinion.

VACATED and REMANDED.