George A. LIES, Plaintiff-Appellant,

v.

FARRELL LINES, INC. and Does One through Ten, inclusive, Defendants-Appellees.

No. 79–4036.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 17, 1980.

Decided April 6, 1981.

Michael James Moriarty, San Francisco, Cal., for plaintiff-appellant.

James R. Walsh, San Francisco, Cal., argued, for defendants-appellees; Daniel M. Blumenfeld, San Francisco, Cal., on brief.

Before BROWNING and TRASK, Circuit Judges, and JAMESON,* District Judge.

JAMESON, Senior District Judge:

Appellant, George A. Lies, brought this action against appellee, Farrell Lines, Inc., under the Jones Act, 46 U.S.C. § 688, for injuries he received on July 4, 10 and 11, 1974, while working as a seaman on a vessel owned and operated by Farrell Lines. While the suit was pending, Lies was injured again in October, 1977, while working on another company's vessel and claimed that this accident was caused in part by the injury of July 11, 1974. The district court granted the motion of Farrell Lines for partial summary judgment that Farrell Lines was not liable for injuries or damages proximately caused by Lies' October, 1977, accident. The jury returned a verdict in Lies' favor for $500.00 for the injuries sustained in the July, 1974 accidents, and judgment was entered for that amount. Lies appeals from the judgment and denial of his motion for a new trial.

## I. Factual Background

George Lies is an able-bodied seaman. In July, 1974, he was involved in three accidents while working aboard the S. S. Austral Pilgrim, a vessel owned by Farrell Lines. The first accident occurred on July 4, at approximately 12:30 A. M. Lies was ordered over his protest to stow some cargo gear in an unlit area below deck. After stowing the gear, he attempted to return to the deck. In the darkness he stepped through an open hatch, catching himself with his arms. He bruised and cut his shin in the fall. He was treated several hours

---

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

later and returned to the ship fit for duty. The shin became infected on a long voyage to Africa and did not heal for some time.

In the second accident on July 10, Lies and two fellow workers were struck by a falling preventor guy[1] which had parted from a cargo boom due to corrosion. The preventor guy fell about 60 feet before striking Lies on the head. The blow knocked Lies to his knees and dazed him, but he was not unconscious. He was taken in an ambulance to a hospital in Bayonne, New Jersey. After a brief medical examination and tests, he again returned to the ship fit for duty. No serious or permanent injuries were discovered, although Lies claims that the blow caused a previously asymptomatic cervical disc condition to become symptomatic, and that he now suffers from throbbing headaches twenty-four hours a day.

The following day, July 11, Lies had another accident. He was unshackling another preventor guy to bring a boom in when the boatswain (bos'n) ordered the winchman to let out the boom. The preventor guy tightened, catching Lies' left hand between the shackle and the bulwark. He suffered a bruised hand, but no bones were broken. Lies testified that his hand has been weak since the accident as a result of nerve damage. Medical examination immediately after the accident disclosed no significant injuries. There is conflicting evidence concerning weakness of grip as a result of tests performed in preparation for trial of this action.

Lies left the Austral Pilgrim in September of 1974. In November, 1974, he reported to the U.S. Public Health Service Hospital, complaining of chronic headaches and blackouts. Neurological and physical tests again disclosed no sign of injury. There is evidence that Lies is an alcoholic, and Farrell Lines' doctor, who examined him, diagnosed alcoholism as the cause of the head-

aches and blackouts. Public Health Service doctors who treated Lies over the course of the year following his three accidents were of the opinion that muscle tension caused the headaches. A neurologist hired by Lies for this litigation testified that headaches resulted from an aggravation of a pre-existing asymptomatic arthritis of the cervical spine.

Lies filed his complaint in this action in August, 1976, seeking damages for the injuries suffered in the three July, 1974, accidents and alleging that Farrell Lines negligently maintained and operated the vessel, that the vessel was unseaworthy, and that Farrell Lines had not furnished adequate medical attention. There was extensive discovery during the ensuing year, and the case was set for trial on December 12, 1977. A few weeks before trial, however, Lies informed Farrell Lines that he had been injured in an accident aboard the S.S. Texaco New Jersey, in October, 1977. That accident occurred while Lies was "slushing"[2] (applying an anticorrosion compound to) some rigging thirty feet above deck. He was seated on a bos'n's chair which was suspended from four ropes secured to a shackle placed over the rigging being treated. Lies had slushed several stays on the vessel without incident. While pulling himself along one stay, however, with his left hand, one of the ropes holding the seat came undone. The chair fell away, and Lies was unable to hold his own weight hanging from the stay with his left hand. He fell to the deck and suffered a disabling back injury.

Lies had been working fairly regularly aboard various vessels from the time he left the Austral Pilgrim until his accident on the Texaco New Jersey. His injuries from that mishap disabled him from working until at least mid-March, 1978. Farrell Lines learned that Lies intended to claim that his

---

1. The preventor guy was a braided steel wire rope one and one-half inch thick and about fifty-six feet long. It was attached to a cargo boom at the top, and at the bottom to the bulwark at the side of the ship. Its function is to prevent excess swinging of the boom.

2. Slushing is a routine procedure of applying a coating of tallow and whitlead mixture to wire ropes known as stays which steady and support the vessel's mast and king posts.

injuries suffered aboard the Texaco New Jersey were caused by weakness in his left hand, which in turn resulted from the accident aboard the Austral Pilgrim.

In October, 1978, Farrell Lines filed a motion "for an order of partial summary judgment in defendant's favor or, in the alternative, for an advance determination of legal issues and designation of the order of proof at trial that FARRELL is not liable for injuries or damages proximately caused by plaintiff's October, 1977 and later subsequent accident." In support of its motion Farrell Lines contended that the negligence and unseaworthiness of the Texaco New Jersey, was an intervening and independent superseding proximate cause of the October, 1977, accident and that Farrell Lines, as a matter of law, could not be held liable for injuries resulting from that accident. Following oral argument on November 17, 1978, the court orally granted the motion, and the court minutes contain an entry that the defendant's motion for summary judgment was granted. No formal order was entered.

The case proceeded to trial on November 20, 1978, on the issue of Farrell Lines' liability for the July, 1974, accidents on the Austral Pilgrim. Lies offered into evidence a three-foot replica of the preventor guy which fell from the cargo boom and struck Lies on the head. The court refused to admit the exhibit on the ground that it was not in the same condition as the preventor guy involved in the accident. The original had been discarded at sea, which was apparently the normal procedure when a part becomes worthless. Although the replica was not admitted into evidence, Lies' attorney was permitted to use it in questioning witnesses, as well as during closing argument. The jurors were not allowed to hold it or examine it closely, however. During deliberations the jury asked to see the replica, but the request was refused.

The jury returned a $500 verdict for Lies, who then moved for a new trial. The motion was denied, and this appeal followed.

## II. *Issues on Appeal*

Two issues are presented: (1) whether the court erred in granting partial summary judgment for the defendant; and (2) whether the court abused its discretion in refusing to admit into evidence the proffered replica of the preventor guy.

## III. *Partial Summary Judgment*

In contending that partial summary judgment was unwarranted appellant argues that (1) the district court improperly applied a common law negligence causation analysis to this Jones Act case in determining as a matter of law that the Austral Pilgrim accident of July 11, 1974, was not a proximate cause of the Texaco New Jersey accident in October, 1977; and (2) whether the antecedent negligence of Farrell Lines played any part in causing Lies' injuries in the Texaco New Jersey accident presented a triable issue of fact. On the other hand, appellee argues that (1) Lies had fully recovered from the July 11, 1974, accident prior to the October, 1977, injury and the injuries sustained in the prior accident did not in any way contribute to the October, 1977, accident; and (2) that the unseaworthiness and negligence of the S.S. Texaco New Jersey was an intervening and superseding proximate cause of the October, 1977 accident, and the conduct of Farrell Lines did not play any part in that accident.

Under Rule 56(b) of the Federal Rules of Civil Procedure a party against whom a claim is asserted may move for "a summary judgment in his favor as to all or any part thereof." Under Rule 56(c) the moving party has the burden of showing that there is no genuine issue as to any material fact and that he is entitled to a partial summary judgment as a matter of law. Rule 56(d) provides that if a judgment "is not rendered upon the whole case . . . the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy. . . . It shall thereupon make an order specifying the facts that appear without substantial controversy . . . and directing such further proceedings

in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly."[3]

In granting Farrell Lines' motion for "partial summary judgment," the court did not enter a formal order pursuant to Rule 56(d).[4] Following argument and interrogation of counsel, the court said in pertinent part:

According to Prosser, a negligent party can be held responsible for injuries resulting from an intervening cause only when such intervening cause is foreseeable.

And the intervening cause of a negligently tied rope, occurring three years later on a ship belonging to another, is not a cause closely and reasonably associated with the immediate consequences of the defendant's act. That's using Professor Prosser's language.

Now, its perfectly true that common law negligence principles are not strictly applicable to suits under the Jones Act; and that the defendant's negligent injury of plaintiff's hand in 1974 can be argued to be said to be a cause of the 1977 accident.

The Jones Act incorporates the language of the Federal Employers Liability Act, which makes an employer liable in damages for an injury to an employee resulting, in whole or in part, from the employer's negligence.

However, it's a big step from that to state that the defendant ... does not— neither the unforeseeability of the intervening act of a third party, nor the remoteness of such act, will bar recovery against the original negligent party.

And I think the Ammar case[5] is properly distinguished on the ground that the seaman there, his injury was a blackout in the first instance; and when he was driving a motorcycle. That was the cause of his injury. A blackout.

And so for those reasons, the defendant's motion is granted.

In response to a question from counsel for Lies the court stated that counsel was precluded from "bringing in any discussion with regard to the October, 1977, accident."[6]

■ The language quoted above and the court's interrogation of counsel preceding it demonstrate that the court based its grant of partial summary judgment on traditional concepts of remoteness and foreseeability of intervening causes which apply to most tort claims. See generally W. Prosser, *Handbook of the Law of Torts* §§ 43–45, pp. 250–290 (4th Ed. 1971). As to Lies' claim of unseaworthiness, the court's analysis is appropriate. A different test for causation, however, applies to the Jones Act claim.[7]

---

**3.** In discussing Rule 56(d) Professor Moore states that, "It is clear that Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim; that the term 'partial summary judgment' as applied to an interlocutory summary adjudication is often a misnomer." With respect to the purpose of Rule 56(d), Professor Moore quotes the following statement in *Luria Steel & Trading Corp. v. Ford*, 9 F.R.D. 479, 481 (D.Neb.1949):

The partial summary judgment is merely a determination before the trial that certain issues shall be deemed established in advance of the trial. The procedure was intended to avoid a useless trial of facts and issues over which there was really never any controversy and which would tend to confuse and complicate a lawsuit.

6 Moore's Federal Practice [hereinafter *Moore's*] ' 56.20[3.–2] (2d ed. 1976).

**4.** Despite the absence of a formal order, as required by Rule 56(d), see 6 *Moore's* ' 56.-20[3 3], we deem partial summary judgment to have been granted for purposes of this appeal.

**5.** *Ammar v. American Export Lines, Inc.*, 326 F.2d 955 (2 Cir. 1964), discussed *infra*.

**6.** Although the court excluded any discussion of the accident aboard the S.S. Texaco New Jersey, the jury was apprised of the incident. During closing argument counsel for Farrell Lines used the incident to argue that Lies' left hand must not have been weak, because otherwise he would not have undertaken the slushing job. There was apparently no attempt, however, by the plaintiff to establish liability on Farrell Lines for this accident.

**7.** For a good example of instructions distinguishing between proximate cause under the maritime law of unseaworthiness and causa-

"In determining whether or not a grant of summary judgment was proper we are not bound by the usual rule requiring an appellate court to accept the findings of a trial court unless they are clearly erroneous." *Pepper & Tanner, Inc. v. Shamrock Broadcasting, Inc.*, 563 F.2d 391, 393 (9 Cir. 1977). We must first ascertain whether there is any genuine issue as to any material fact, *F.D.I.C. v. First National Finance Co.*, 587 F.2d 1009, 1010 (9 Cir. 1978), that is, an issue which may affect the outcome of the litigation. *Mutual Fund Investors v. Putnam Management Co.*, 553 F.2d 620, 624 (9 Cir. 1977). If there is no genuine issue of material fact, then we must determine whether, viewing the evidence in the light most favorable to the appellant, Farrell Lines is entitled to prevail as a matter of law. *F.D.I.C. v. First National Finance Co., supra* at 1011.

■ Applying these principles to the facts of this case, we find the district court erred in granting summary judgment for Farrell Lines on the issue of liability for the accident occurring aboard the S.S. Texaco New Jersey. At least two issues of material fact were in dispute: (1) whether Lies' left hand was weak as a result of the prior accident on the Austral Pilgrim; and (2) whether any weakness in the hand contributed to Lies' fall from the rigging. The second issue is the crucial one, because if the court could hold, as the district court did, as a matter of law that the alleged negligence of Farrell Lines was not a cause of the injuries sustained in the Texaco New Jersey accident, then the first issue becomes immaterial.

■ Causation is generally a question of fact for the jury, unless "the proof is insufficient to raise a reasonable inference that the act complained of was the proximate cause of the injury." *Leaf v. United States*, 588 F.2d 733, 736 (9 Cir. 1978). Since the sufficiency of proof test involves

a legal determination by the court, proximate cause may be said to be a mixed question of law and fact, which is generally sufficient to preclude summary judgment. See *Pepper & Tanner, supra* at 396. Courts should exercise special care in considering summary judgment in Jones Act cases which require a very low evidentiary threshold for submission to a jury. *Leonard v. Exxon Corporation*, 581 F.2d 522, 524 (5 Cir. 1978), *cert. denied*, 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 397 (1979).

The Jones Act, 46 U.S.C. § 688, provides in pertinent part:

Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; . . .

The reference to statutes modifying or extending the common-law right or remedy in cases of injury to railway employees incorporates the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51, which provides for liability for injury "resulting *in whole or in part* from the negligence of [the employer]." (emphasis added). Because the Jones Act "expressly provides for seamen the cause of action—and consequently the entire judicially developed doctrine of liability—granted to railroad workers by the FELA", *Kernan v. American Dredging Co.*, 355 U.S. 426, 439, 78 S.Ct. 394, 401, 2 L.Ed.2d 382 (1958), we may appropriately look to FELA cases to test the sufficiency of the allegations and proof in this Jones Act claim. See also Annot., 98 A.L.R.2d 653, 677 (1964).

The leading case construing causation under the FELA is *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957). There the Court held that under the FELA, and thus the Jones Act by reference,

---

tion under the Jones Act, see *Litherland v. Petrolane Offshore Construction Services, Inc.*, 546 F.2d 129, 131–33 (5 Cir. 1977). Ironically, the instructions given by the court at the conclusion of the trial on the remaining issues in

the present case make the same distinction. As discussed below, the court did not, however, follow the appropriate law of causation under the Jones Act in ruling on the motion for summary judgment.

the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes .... Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death.

*Id.* at 506–07, 77 S.Ct. at 448–449. (footnotes omitted). The Court went on to explain the development of this liberal treatment of causation under the Jones Act. Noting that under the precursor to the present Jones Act, judicial administration substantially limited the cases in which employees were allowed a jury determination, the Court emphasized that the 1939 amendments to the Act "removed the fetters which hobbled the full play of the basic congressional intention to leave to the fact-finding function of the jury the [question] ... whether employer fault played any part in the employee's mishap." *Id.* at 509, 77 S.Ct. at 450. Congress vested in the jury the power to decide all but the infrequent cases where fair-minded jurors cannot honestly differ whether employer negligence played any part at all in the employee's injury. *Id.* at 510, 77 S.Ct. at 450.

The Second Circuit applied the principles of *Rogers* to a Jones Act claim in *Ammar v. American Export Lines, Inc.*, 326 F.2d 955 (2d Cir.), *cert. denied*, 379 U.S. 824, 85 S.Ct. 48, 13 L.Ed.2d 34 (1964), a case applicable on its facts to the present action. In *Ammar*, a seaman suffered head injuries in a fall while working aboard the defendant's ship. Twenty months later, he was injured in a motorcycle accident allegedly caused by a blackout resulting from the antecedent head injuries. Applying the rationale of *Rogers*, the court ruled that any interven-

ing contributory negligence of the plaintiff in driving the motorcycle while knowing he was subject to blackouts would not insulate the defendant from liability if the head injuries contributed in any way to the second accident.

Farrell attempts to distinguish *Ammar* on the ground that no third party negligence intervened in *Ammar*. The court in *Ammar*, however, itself rebutted this argument, stating that "no distinction can be drawn between the negligence of a third party and that of a claimant in terms of either proximate causation in fact or foreseeability in fact," 326 F.2d at 959. In *Rogers* also, the Supreme Court said, "It does not matter that ... the jury may also ... attribute the result to *other* causes, including the employee's contributory negligence." 352 U.S. at 506, 77 S.Ct. at 448 (emphasis added).

Similarly, the district court distinguished *Ammar* on the ground that "the seaman there, his injury was a blackout in the first instance; and when he was driving a motorcycle, that was the cause of his injury. A blackout." Although the injury in *Ammar* probably played a larger part in the subsequent accident than the alleged weakness in Lies' hand played here, the principle remains the same. As long as a jury could reasonably find that the weak hand played any part, however small, in producing the subsequent injury, Lies was entitled to bring his case to the jury. The district court acknowledged that it was arguable that the Austral Pilgrim accident contributed to the fall on the Texaco New Jersey; it should have allowed the jury to consider the argument after hearing the evidence.

Farrell argues nonetheless that summary judgment was proper because a verdict for the plaintiff would have to be set aside as contrary to the evidence. This argument reflects a common misunderstanding of the relationship between summary judgment, directed verdict, and judgment notwithstanding the verdict. These procedural devices serve related functions,[8] but there are real differences in their operation.

---

8. Each device is one of four opportunities contemplated by the Rules of Civil Procedure for a

judge to remove a case from a jury, i. e., (1) a Rule 12(b)(6) motion to dismiss; (2) a Rule 56

Professor Moore states unequivocally that summary judgment should not be granted on the ground that if a verdict were rendered for the adverse party the court would set it aside as against the weight of the evidence. 6 Moore's ¶ 56.04[2]. The Rule 50(b) procedure for judgment n. o. v. was adopted to alleviate the delay and waste that resulted from improper handling of motions for directed verdict. See *id.* ¶ 56.-04[10]. That delay and waste is analogous to the delay and waste that results from improvident granting of summary judgment. *Id.*

The legal question addressed on both a motion for directed verdict and a motion for summary judgment is the same: "Both motions ... call upon the court to make basically the same determination—that there is no genuine issue of fact and that the moving party is entitled to prevail as a matter of law." *Agosto v. I. N. S.*, 436 U.S. 748, 770–71 n.8, 98 S.Ct. 2081, 2094 n.8, 56 L.Ed.2d 677 (1978) (Powell, J., dissenting). Because these motions appear at different stages of the proceedings, however, the court is freer to direct a verdict than to grant summary judgment. The motion for directed verdict comes after the plaintiff has presented his evidence, or at the close of the trial, so the court has a better basis on which to determine the existence of material issues. Cf. *Id.* (major difference between summary judgment and directed verdict is that credibility determinations may enter into the latter but not the former). Indeed, denial of summary judgment does not preclude a subsequent directed verdict in the same case. As pointed out in *Robbins v. Milner Enterprises, Inc.*, 278 F.2d 492, 497 (5 Cir. 1960):

To require a trial which will (or may) end in the very same judgment of dismissal which we here reverse may appear to be an unnecessary and wasteful expenditure of precious limited judicial resource. Of course, it is not. What it is, is

a recognition that at times the issues may be such that only after the agony of a full-blown trial may it authoritatively be determined that there was never really the decisive issue of fact at all.

See also 6 Moore's ¶ 56.02[10].

At each successive "look" provided by the Rules of Civil Procedure the court's basis for taking a case from the jury broadens. All five motions serve basically the same function, but just as the summary judgment procedure affords a more efficacious method for raising the legal question of recovery or non-recovery than do the motions for dismissal for failure to state a claim and judgment on the pleadings, *Id.* ¶ 56.15[6], so also are motions for directed verdict and judgment n. o. v. better procedures for disposing of cases where there is any initial doubt whether a material issue of fact exists.

Summary judgments are to be cautiously granted, and "if there is to be error at the trial level it should be in denying summary judgment in favor of a full live trial." *Id.* ¶ 56.15[1.—2]. This is especially true in the case of actions brought under the Jones Act. *Id.* ¶ 56.15[35]. We cannot say as a matter of law that there are no material issues of fact and that the alleged injury to Lies' left hand in the July 11, 1974, accident could not have "played any part" in the October, 1977, accident on the Texaco New Jersey. *Rogers, supra.* We conclude accordingly that the district court erred in granting partial summary judgment for Farrell Lines with respect to the claim under the Jones Act for alleged injuries sustained in the Texaco New Jersey accident as a result of the alleged injury to Lies' hand in the July 11, 1974, accident.

## IV. *Admissibility of Demonstrative Evidence*

Lies contends the court erred in excluding from evidence a three-foot replica of the preventor guy which fell from a boom

motion for summary judgment; (3) a Rule 50(a) motion for directed verdict; and (4) a Rule 50(b) motion for judgment n. o. v. *Robbins v. Milner Enterprises, Inc.*, 278 F.2d 492, 497 (5

Cir. 1960). Professor Moore adds a fifth possibility, a Rule 12(c) motion for judgment on the pleadings. 6 Moore's ' 56.04[2] n.12.

and struck Lies on the head. He argues that the weight of the preventor guy was highly relevant to prove the severity of the blow, and notes that the jury was apparently interested in the weight of the guy, as evidenced by their request to examine the replica. Lies also contends that the trial judge's explanation to the jury that the exhibit was only a "rough" replica of the actual guy undermined the credibility of Lies' witnesses who testified that it was identical.

A trial judge has wide latitude in the admission or exclusion of evidence where the question is one of materiality or relevancy, *Holt v. United States*, 342 F.2d 163, 166 (5 Cir. 1965), and a decision to exclude evidence will not be disturbed unless there has been an abuse of discretion.[9] *United States v. Brannon*, 616 F.2d 413, 418 (9 Cir. 1980); *Gaspard v. Diamond M. Drilling Co.*, 593 F.2d 605, 607 (5 Cir. 1979). Where evidence is highly probative and it will not tend to prejudice or confuse the jury, however, all doubt should be resolved in favor of admissibility and abuse of discretion may be found where no other evidence was admitted to prove the fact sought to be established by the excluded evidence. *Holt, supra* at 166–67.

Applying these principles to the facts of this case, we find no abuse of discretion. The court excluded the replica because it was not in the same condition as the original preventor guy and it may have misled the jury. Although the new condition of the replica should have no bearing on its admissibility, since it is the weight of the guy, not its age, that is relevant to the alleged injury, the replica could have misled the jury. The replica was only three and one-half feet long. Such a short piece, which does not accurately represent the weight of the falling guy, may well have led the jury to speculate on whether it could have caused Lies' chronic headaches. One

doctor testified that he could not tell from examining it how much damage a longer version would cause if it fell sixty feet. We question whether a jury could make an informed judgment in light of the doctor's inability to make that determination.

Moreover, there was ample and arguably more reliable evidence admitted to show the severity of the blow. One doctor testified that the impact caused a previously asymptomatic condition to become symptomatic. Medical reports showed the extent of the injuries. There was testimony that the guy knocked Lies to his knees, but did not render him unconscious. Witnesses described the guy wire, and the jury saw the replica from a distance and watched as Lies' attorney dropped it to demonstrate its weight. Unlike the evidence in *Holt, supra*, admission of the replica was not vital to Lies' case. The court did not abuse its discretion in excluding the replica. Even assuming it was error to exclude the replica, however, the error was harmless in light of the other evidence admitted at trial and the court's permitting counsel for Lies to use the replica for demonstration purposes. See *Wright v. Redman Mobile Homes, Inc., supra*, 541 F.2d at 1098.

### V. Remand for Partial New Trial

Having concluded that the district court erred in granting summary judgment for Farrell on the Jones Act claim for injuries sustained in the Texaco New Jersey accident in October, 1977, it is necessary to remand for a new trial. We have found no error with respect to the issues involved in the three Austral Pilgrim accidents in July, 1974; nor do we find erroneous the summary judgment on the unseaworthiness claim as to the Texaco New Jersey accident.[10] The question arises whether the retrial upon remand should be limited to the claim under the Jones Act for injuries suffered as a result of the Texaco New Jersey accident.

---

**9.** The admissibility of demonstrative evidence in particular is largely within the discretion of the trial judge. *Wright v. Redman Mobile Homes, Inc.*, 541 F.2d 1096, 1097–98 (5 Cir. 1976).

**10.** See note 7 and accompanying text, *supra*.

In *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 499, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931), the Supreme Court held "that where the requirement of a jury trial has been satisfied by a verdict according to law upon one issue of fact, that requirement does not compel a new trial of that issue even though another and separable issue must be tried again." The Court cautioned, however, that although partial new trials are permitted, the device "may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." *Id.* at 500, 51 S.Ct. at 515.

The Federal Rules of Civil Procedure provide for limited retrial in appropriate cases. Fed.R.Civ.P. 59(a) authorizes district courts to grant a new trial "to all or any of the parties and on all or part of the issues." Although Rule 59(a) is expressly applicable only to new trials granted by district courts in response to a motion for new trial, its principle has been applied to orders of remand from appellate courts. See, e. g., *Furr v. Herzmark*, 206 F.2d 468, 472 (D.C. Cir.1953). The power to grant a partial new trial under Rule 59(a) is comparable to the court's power under Rule 42(b) to separate issues and parties for original trial. 6A Moore's ¶ 59.04[4].

As Professor Moore has stated, an appellate court "has a large discretion to grant a new trial as to all the issues, or a partial new trial. If the issues are interwoven, then a new trial as to all of the issues should be ordered. On the other hand if the error below did not extend to the whole judgment but only to a particular issue(s) and this is sufficiently separate so that a fair trial may be had as to it alone, the appellate court may grant a partial new trial limited to such separate issue, whether the issue is one of damages or some other issue." 6A Moore's ¶ 59.06, at 59–89–91.

Appellate courts have limited trial on remand to the issue of damages when "the issues of damages and liability are not so interwoven as to require a new trial on both." *Greenwood Ranches, Inc. v. Skie Construction Co.*, 629 F.2d 518, 522 (8 Cir. 1980). In *Taylor v. Denver and Rio Grande Western Railroad Co.*, 438 F.2d 351 (10 Cir. 1971), an action brought under the Federal Employees' Liability Act, the case was remanded because of an erroneous instruction on damages, and the retrial was limited to issues pertaining to damages. In *Mazer v. Lipschutz*, 327 F.2d 42, 52 (3 Cir. 1963), a malpractice action in which the jury had found that the defendant surgeon was not individually negligent, but the court had erred in its charge to the jury with regard to the surgeon's vicarious liability under Pennsylvania law, the new trial on remand was limited to the issue of the surgeon's vicarious liability.[11]

Here the question of Farrell's liability for the Texaco New Jersey accident is clearly "distinct and separable" from the other three accidents aboard the Austral Pilgrim. In fact the trial court separated this issue on the motion for summary judgment. There remains the question of whether the Jones Act claim and unseaworthiness claim for injuries suffered on the Texaco New Jersey are also distinct and separable. We conclude that they are.

The unseaworthiness claim depends on a theory of strict liability and employs traditional proximate cause analysis. The Jones Act requires proof of employer negligence and borrows the law of causation developed under the FELA. See *Litherland v. Petrolane Offshore Construction Services, Inc.*, supra note 7, 546 F.2d 131–32. The partial summary judgment was in error only as to the proximate cause analysis under the Jones Act.

We are mindful that we " 'should proceed with caution' " in remanding for a partial new trial, but we also "should not be slow

---

11. Upon retrial the jury found the doctor vicariously liable. The judgment was again appealed, resulting in a second partial remand with instructions on issues unrelated to the original

appeal. *Mazer v. Lipschutz*, 360 F.2d 275 (3 Cir.), *cert. denied* 385 U.S. 833, 87 S.Ct. 72, 17 L.Ed.2d 68 (1966).

to adopt [a] rule that looks to the preventing of further contest on phases of litigation or issues already well settled, the saving to litigants the costs incident to relitigation of such matters, and to the courts the time unnecessarily consumed therein." 6A Moore's ¶ 59.06 n. 36. (Citations omitted).

Accordingly, we limit retrial to the issue of Farrell's liability under the Jones Act for Lies' injuries resulting from the Texaco New Jersey accident.

Affirmed in part; reversed and remanded in part.