959 F.2d 805
 1992 A.M.C. 1720, 60 USLW 2629
 James R. BENEFIEL; Edward D. Taylor, individually, on
behalf of themselves, and on behalf of all others
similarly situated, Plaintiffs-Appellants,
v.
EXXON CORPORATION; Exxon Shipping Co.; Alyeska Pipeline
Service Company; Trans-Alaska Pipeline Liability
Fund, Defendants-Appellees.
 No. 90-56055.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 10, 1991.
Decided March 24, 1992.
 
 Francis O. Scarpulla, San Francisco, Cal., Edwin C. Schreiber, Encino, Cal., for plaintiffs-appellants.
 John F. Daum, O'Melveny & Myers, and Robert S. Warren, Gibson, Dunn & Crutcher, Los Angeles, Cal., A. Stephen Hut, Washington, D.C., for defendants-appellees.
 Robert B. Mitchell, of Preston Thorgrimson Shidler Gates & Ellis, Anchorage, Alaska, appeared and argued on behalf of the States of Alaska and Cal., amici curiae.
 Appeal from the United States District Court for the Central District of California.
 Before: SCHROEDER, LEAVY and FERNANDEZ, Circuit Judges.
 SCHROEDER, Circuit Judge:
 
 
 1
 This is a case arising out of the multi-million gallon crude oil spill which occurred when the Exxon Valdez ran aground in Prince William Sound in 1989. The plaintiffs in this case seek to represent a class of those who purchased gasoline in California during a specified period following the spill. They seek to recover damages representing what they claim was the increased price they were required to pay as a result of the spill. They brought this action originally in state court against Exxon, Exxon Shipping (the owner of the Exxon Valdez), Alyeska (which operates the pipeline and is responsible for clean-up procedures following spills), and the Trans-Alaska Pipeline Liability Fund (the "TAPAA Fund"), established pursuant to section 204(c)(4) of the Trans-Alaska Pipeline Authorization Act (TAPAA), 43 U.S.C. § 1653(c)(4). The defendants removed to federal district court. The district court dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the case arose out of a disaster at sea, the district court applied the maritime rule set forth in Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927), which requires physical injury for recovery of economic damages. Since the plaintiffs' losses are wholly economic, the district court held that plaintiffs had failed to state a claim upon which relief could be granted.
 
 
 2
 The plaintiffs appeal claiming, first, that the case should never have been removed to district court because the plaintiffs do not intend to pursue a federal claim. Alternatively, they contend that the district court erred in applying the rule of Robins Dry Dock.
 
 
 3
 We deal first with the contention that the case was improperly removed. Defendants may remove a case over which the district court would have original jurisdiction "founded on a claim or right arising under the Constitution, treaties or laws of the United States." 28 U.S.C. § 1441(b). For purposes of this case, it is enough to observe that the basis for federal question jurisdiction was pleaded on the face of the plaintiffs' complaint, which alleged, among other things, that "[s]trict liability, without regard to fault, is imposed by TAPAA" and that defendants are liable "[i]n accordance with the TAPAA provisions." Although plaintiffs now deny any intention to pursue a claim pursuant to TAPAA, the complaint itself, reasonably read, sets forth such a claim and the defendants were entitled to remove.
 
 
 4
 A more interesting issue is whether the physical damage limitation applicable in admiralty applies in this case after passage of TAPAA. TAPAA provides for the abrogation of certain limits on the liability of transporters of Trans-Alaska Pipeline oil:
 
 
 5
 Notwithstanding the provisions of any other law, if oil that has been transported through the trans-Alaska pipeline is loaded on a vessel at the terminal facilities of the pipeline, the owner and operator of the vessel (jointly and severally) and the [TAPAA] ... shall be strictly liable without regard to fault in accordance with the provisions of this subsection for all damages, including clean-up costs, sustained by any person or entity, public or private, including residents of Canada, as the result of discharges of oil from such vessel.
 
 
 6
 43 U.S.C. § 1653(c)(1). The plaintiffs now maintain that this subsection, while not itself establishing a federal cause of action, does repeal all "provisions of any other law," including limitations on liability such as the Robins Dry Dock rule.
 
 
 7
 We do not need to reach the specific issue of Robins Dry Dock abrogation, for we are confident that Congress in enacting TAPAA did not intend to abrogate all principles of proximate cause. The Act provides for strict liability for damages that are the "result of discharges." In discussing the need for stricter liability, Congress observed that spills of Alaska North Slope oil "could result in extremely high damages to property and natural resources, including fisheries and amenities, especially if the mishap occurred close to a populated shoreline area." House Conference Report, H.R.Rep. No. 924, 93rd Cong., 1st Sess. (1973), reprinted in 1973 U.S.Code Cong. & Admin.News 2417, 2523, 2530. Congress envisioned damages arising out of the physical effects of oil discharges. The remote and derivative damages of the type claimed by plaintiffs here fall outside the zone of dangers against which Congress intended to protect when it passed TAPAA.
 
 
 8
 This conclusion is consistent with uniformly accepted principles of tort law which require a plaintiff to prove more than that the defendant's action triggered a series of other events that led to the alleged injury. See Restatement (Second) of Torts §§ 431, 433, 440-453 (1965). Whether conduct is a "substantial factor in bringing about harm" depends in part on whether the "actor's conduct ... has created a situation harmless unless acted upon by other forces for which the actor is not responsible." Restatement (Second) of Torts § 433(b).
 
 
 9
 In this case, the spill itself did not directly cause any injury to the appellants. Rather, plaintiffs alleged the spill triggered a series of intervening events, including the decision of the United States Coast Guard to close the Port of Valdez to facilitate clean-up efforts; the alleged decision by refineries in the western United States to raise prices rather than to use their own oil reserves to make up any shortage; and the decision of wholesalers, distributors and retailers to pass on these price increases.
 
 
 10
 Indeed, the plaintiffs' own complaint alleged that "Exxon, and the other oil companies with refineries in California" maintain sufficient reserves of crude oil such that the closure occasioned by the spill from the Exxon Valdez "should not have caused gasoline prices to increase in California." Thus, plaintiffs themselves alleged the existence of at least one intervening act causing the price hike: the alleged decision of California oil refiners to exploit the supposed shortage.
 
 
 11
 While proximate or legal causation normally presents an issue for the trier of fact to resolve, both California and federal law recognize that where causation cannot reasonably be established under the facts alleged by a plaintiff, the question of proximate cause is one for the court. Lies v. Farrell Lines, Inc., 641 F.2d 765, 770 (9th Cir.1981); Rexall Drug Co. v. Nihill, 276 F.2d 637, 645 (9th Cir.1960); Bigbee v. Pacific Tel. & Tel. Co., 34 Cal.3d 49, 56, 192 Cal.Rptr. 857, 860, 665 P.2d 947, 950 (1983); Weissich v. County of Marin, 224 Cal.App.3d 1069, 1084, 274 Cal.Rptr. 342, 352 (1990). Because the facts plaintiffs here alleged present such a case, the complaint was properly dismissed.
 
 
 12
 AFFIRMED.