COMMON CAUSE et al., Plaintiffs,

v.

FEDERAL ELECTION COMMISSION et al., Defendants.

Civ. A. No. 78–2135.

United States District Court, District of Columbia.

April 30, 1980.

Kenneth J. Guido, Jr., Donald J. Simon and Ellen Block, Washington, D. C., for plaintiffs.

Lawrence M. Noble and R. Scott Rinn, Federal Election Commission, Washington, D. C., for defendants.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

The Federal Election Campaign Act (FECA or Act), 2 U.S.C. § 431 *et seq.*,[1] prescribes the maximum amounts that may be contributed by particular sources to candidates for federal elective office. In this proceeding, plaintiff[2] Common Cause charges that the American Medical Association (AMA) violated certain of those limits.[3]

---

1. FECA was amended in January, by Pub.L.No. 96–187, 93 Stat. 1339 (1980). *This action was* brought prior to those amendments, and the pre-amendment version of the Act applies. Accordingly, unless otherwise indicated, any references to the statute are to the earlier version.

For an account of the statutory scheme generally, see this Court's March 21, 1979 Memorandum Opinion and Order dismissing the American Medical Association as a party defendant: *Common Cause v. FEC,* 82 F.R.D. 59 (D.D.C.1979).

2. Also named as plaintiffs in this proceeding are David Cohen, president of Common Cause, and Nan Waterman, a former chairwoman of the organization.

3. Section 441a(a)(2)(A) of Title 2 provides:

Common Cause also charges that while those violations were called to the attention of the Federal Election Commission (Commission or FEC), the Commission nonetheless failed to act timely on the complaints as required by the Act. The issue raised by the administrative complaints is the relationship between the AMA and its political action committee—the American Medical Political Action Committee (AMPAC)—on the one hand and the various state medical associations and their respective political action committees (PACs) on the other.

In June, 1978, Common Cause asserted in an administrative complaint that AMPAC and the state medical PACs constituted a single political committee as defined by the FECA, 2 U.S.C. § 441a(a)(5),[4] and therefore were limited to a total contribution of $5000 per candidate for federal elective office in each election cycle. The complaint listed numerous instances in the 1976 congressional election where the combined contributions of AMPAC and a state PAC to an individual candidate or committee exceeded the $5000 limit. In November, 1978, Common Cause brought this action requesting the Court to enter a judgment declaring that the Commission's failure to act on its complaint was contrary to law and to issue an injunction directing the Commission to proceed in conformity with the Court's declaration within 30 days.

Following several years of investigation, the Commission in recent months has executed conciliation agreements[5] with AMPAC and most of the state medical PACs named in the 1978 administrative complaint, prohibiting the combined contributions complained of by Common Cause.

> No multicandidate political committee shall make contributions . . . to any candidate and his authorized political committees with respect to any election for Federal office which, in the aggregate, exceed $5,000.

4. The relevant text of the statute is set forth *infra* at 742–743.

5. Section 437g(a)(5)(A) provides for conciliation agreements. *See infra* at 741 and 742 for further discussion.

Before the Court at this time are cross motions for summary judgment. When Common Cause sought summary judgment, the Commission had entered conciliation agreements only with AMPAC and several state PACs named in the June, 1978 complaint. Accordingly, Common Cause argued that the relief provided by those agreements was inadequate and that in any event it came too late. The additional agreements reached by the Commission since the filing of Common Cause's motion alter the facts considerably and compel a different conclusion.

For the reasons set forth the Court concludes that the Commission's action with regard to those situations in which it has entered conciliation agreements is not contrary to law. The Court also concludes that the Commission's failure to take final action with respect to the remaining state PACs named by Common Cause is not unlawful. If required statutory action is not pursued within the prescribed time, Common Cause may bring suit in its own name to remedy the violations alleged.

## Background

In its June, 1978 complaint the plaintiffs alleged forty-eight contribution violations by AMPAC and some twenty state PACs. In an earlier administrative complaint of October, 1976, Common Cause alleged twenty-one similar violations for a total of sixty-nine violations in twenty-four states.[6] All of the violations save one involved a contribution by AMPAC and a single state PAC to a congressional candidate or his political committee. The exception was the allegation in the June, 1978 complaint that AM-

6. When this action was brought, FECA required a challenge such as this to the Commission's failure to act within 90 days of the filing of a complaint to be brought within 60 days after the 90 day period. § 437g(a)(9)(B)(ii). Thus only the June, 1978 complaint is technically before this Court. The FEC has not contested, however, the Court's consideration of the violations raised by the initial complaint in effect treating them as one with the second complaint. In light of the nationwide scope of the investigation and the agency's position, the Court does so also.

PAC and two state committees, the Texas PAC and the Florida PAC, had contributed $5000, $5000 and $1000 respectively to the congressional candidacy of Ron Paul of Texas.

In February, 1977, between the filing of Common Cause's two administrative complaints, the Commission expanded its investigation to all state medical associations and PACs while focusing on seven states where there was relatively large financial activity by the PACs in concert with AMPAC. In addition to Common Cause's initial 1976 complaint, four other complaints from different sources had been filed by February, 1977, all alleging contribution violations by AMPAC and the state political committees. The Commission investigation was well underway when Common Cause filed its second complaint in June, 1978. Five of the state PACs cited by Common Cause—those of Florida, North Carolina, Ohio, Pennsylvania, and Texas—were among the seven targeted by the Commission.

During the course of its investigation, the Commission mailed informal requests for information to each respondent, conducted over 60 depositions, and collected approximately 60,000 pages of documents. In the process, the Commission issued orders or subpoenas for relevant documents. Deposition of witnesses for the AMA, AMPAC, each of the seven targeted state PACs and one of the targeted state associations were also scheduled. The Commission's efforts were resisted and it was in turn compelled to file subpoena enforcement actions in the appropriate federal district court on at least nine separate occasions. By the end of 1978, most of the subpoena enforcement actions were resolved.

In addition, the Commission issued numerous subpoenas which did not require judicial enforcement. Subsequent to the filing of Common Cause's June, 1978 complaint, subpoenas were issued to the AMA and AMPAC for additional document production and to twenty-two state PACs and seventeen state medical societies for document production.

At a July, 1979, pretrial conference, in response to the Court's expression of concern at the slowness of the administrative proceeding, Commission counsel stated that the investigation was entering the final stages. In August, the General Counsel was to present general findings to the Commission in the form of an "overview" report and shortly thereafter recommendations as to whether or not there was reasonable cause to believe that violations of FECA had occurred.[7]

In light of these representations, the Court received and reviewed *in camera* the General Counsel's overview report, his recommendations, and the final actions taken by the Commission. Certain interim reports previously submitted to the Commission were also made available. The plaintiffs were given access to these materials subject to two protective orders.[8]

In the fall of 1979, the Commission found reasonable cause to believe that the reporting requirements and contributions limits of the Act had been violated. It then entered separate conciliation agreements with AMPAC and five of the targeted state PACs. Three of the five state PACs were among the twenty-four cited in Common Cause's two administrative complaints. The Commission has since executed similar agreements with eleven additional state PACs named in the Common Cause complaints and is reportedly in the process of concluding agreements with the remaining ten state PACs named by Common Cause.

The agreement with AMPAC provides that

7. Where the Commission makes such a finding, it is required under the Act to seek to resolve for at least 30 days the purported violations through conciliation with the respondent(s). § 437g(a)(5)(A). If, on the other hand, the Commission finds no reasonable cause to believe a violation has occurred, such finding ends the investigation.

8. For a discussion of the initial protective order and the Act's confidentiality provision generally, see the Court's August 10, 1979 Memorandum in Support of Protective Order at 83 F.R.D. 410 (1979).

AMPAC will not make contributions to any candidate or political committee which, when aggregated with contributions to the same candidate or same political committee by any of the political committees of the recognized medical associations . . . exceed the contribution limitations of 2 U.S.C. § 441a(a)(2). AMPAC has also reported all of the state political committees in its statement of organization filed with the Commission, resolving its alleged violation of the Act's reporting requirement, § 433(b)(2).[9] The conciliation agreements with the individual state PACs contain similar provisions. In each the state PAC agrees not to aggregate political contributions with AMPAC in excess of $5000 and to report its relationship with AMPAC in its statement of organization filed with the FEC.

### The Legal Issue

The Court is called upon to determine whether the Commission failed to act on Common Cause's administrative complaint, and if so, whether that failure was contrary to law. § 437g(a)(9)(A) and (C). When this action was filed, the statute permitted a person aggrieved by the failure of the Commission to act on a complaint within 90 days of filing, to challenge that failure within 60 days of the 90 day period. Since the Commission has entered conciliation agreements with AMPAC and a majority of the state PACs cited by Common Cause, it has taken final action as to most of the violations complained of. The question is thus whether the Commission action is an adequate and timely response to the June, 1978 administrative complaint.

Common Cause argues that any action short of "final" action within 90 days of the filing of an administrative complaint is contrary to law within the meaning of the statute. It defines final action as the agency's dismissal of the complaint, entering a

conciliation agreement, or commencement of a civil suit against the respondent. Alternatively, plaintiffs argue that if final action is not required within 90 days, the standard to be applied is whether the Commission has acted "expeditiously." *See* § 437g(a)(3)(A).

The Commission views the 90 day provision as jurisdictional, giving the Court power after such time to decide whether the agency's failure to act is contrary to law. The standard the Court should employ, it argues, is whether the Commission's action or lack thereof is arbitrary and capricious, and an abuse of discretion.

■ The language and intent of the relevant provisions of the Act, the duties and powers given the Commission in the enforcement scheme, as well as the recent amendments to the Act support the agency's position.[10]

First, the provision under which plaintiffs brought this action, authorizing judicial review after 90 days of the Commission's failure to act on a complaint, provides that "the court *may* declare that . . . the failure to act, is contrary to law . . . ." § 437g(a)(9)(C) (emphasis added). The Court is given discretion in the determination and indeed if final action were required in all cases within 90 days, the separate provision of FECA requiring the agency to investigate administrative complaints "expeditiously," § 437g(a)(3)(A), would be ambiguous and arguably surplusage as well.

Secondly, the issue raised by the several administrative complaints—whether AMPAC and the state medical PACs are a single committee for purposes of FECA's contributions ceilings—was not one that could be resolved summarily. The relevant section of the Act provides in part:

all contributions made by political committees established or financed or main-

---

9. The Act requires covered political committees to file a statement of organization which includes among other things the names of affiliated or connected organizations. 2 U.S.C. § 433(b)(2).

10. The Court is aware that prior to the recent amendments, Judge June Green reached a different conclusion on a very different set of facts in *National Right to Work Committee v. Thomson*, Fed. Elec. Camp. Fin. Guide ¶ 9042 (CCH) (D.D.C. 1977).

tained or controlled by any corporation, labor organization, or any other person, including any parent, subsidiary, branch, division, department, or local unit of such corporation, labor organization, or any other person, or by any group of such persons, shall be considered to have been made by a single political committee . . . . .

§ 441a(a)(5).

Common Cause asserted in its June, 1978 complaint that the "plain words of the [Act]" and the Commission's own regulations compelled the conclusion that AMPAC and the state PACs constitute a single political committee for purposes of the contribution limits. The Commission, however, contended and the Court agrees that the determination of whether AMPAC and the state medical PACs are established, financed, maintained or controlled by the same entity is a factual one, requiring proof. *See Walther v. FEC*, 438 F. Supp. 1235, 1239 (D.D.C.1979). While under the last clause of section 441a(a)(5), the PACs of a labor organization and its local, or of a corporation and its subsidiaries, are automatically treated as one political committee, political committees of the AMA and the state associations are not included in that provision. Nor do these committees fit precisely within any of the categorical rules set out in the Conference Report on the 1976 amendments to describe when political committees will automatically be treated as a single political committee. H.R.Rep.No.1057, 94th Cong., 2d Sess. 58 (1976), U.S.Code Cong. & Admin.News 1976, p. 929.

The nature of the enforcement scheme and the central role played by the agency also indicate that Congress did not intend the Commission to take final action on all complaints within 90 days. The Act favors the resolution of complaints through informal methods with resort to the courts as a last resort. The Commission is given exclusive primary jurisdiction to investigate complaints through an escalating series of possible findings from an initial reason to believe finding through a reasonable cause and ultimately a probable cause to believe finding that a violation has occurred. Where the Commission makes a reasonable cause to believe finding, it must seek to resolve the matter through conciliation for at least 30 days. § 437g(a)(5)(A). In addition, the Commission is given the power to subpoena documents and testimony; judicial enforcement of such subpoenas takes time as demonstrated in the investigation challenged in this proceeding.

Finally, the 1979 amendments to the Act [11] also support the conclusion that the 90 day provision should not be read to require final action in all cases within that period. While the amendments do not apply to this action brought prior to their enactment, they nonetheless shed light on the issue. *See United States v. General Motors Corp.*, 518 F.2d 420, 436–37 (D.C.Cir. 1975). First, the time limits specified for the various stages of an agency investigation cannot be completed under all circumstances within 120 days of the filing of a complaint, the period after which a complainant may now seek judicial review of an agency's failure to act. Second, the requirement that such challenge to a failure to act be brought within 60 days of the 90 (now 120) day period after the complaint has been filed is deleted, while it remains for challenges to the agency's dismissal of a complaint. If Congress had intended that final action occur in all cases within 120 days of a complainant's filing, it would have made sense to leave in the 60 day limitation. The legislative history is also instructive. Senator Pell, Chairman of the Committee on Rules and Administration which reported the Senate bill, said in explanation of the failure to act provision:

The Commission is entrusted with the responsibility of passing on complaints. . . . And to assure that the Commission does not shirk its responsibility to decide that [judicial review] section . . provides that *a total failure to address a complaint* within 120 days is a basis for a court action. But [this basis] for judicial intervention [is] not intended to work a

---

11. Pub.L.No.96–187, 93 Stat. 1339 (1980).

transfer of prosecutorial discretion from the Commission to the courts.

125 Cong.Rec. S19099 (daily ed. Dec. 18, 1979) (emphasis added). The phrase "a total failure to address a complaint" cannot reasonably be read to mean failure to take final agency action.

 Having determined that the 90 day provision does not in every case require final agency action within that period, the Court must still decide whether the Commission's conduct of the investigation and the agreements entered into are contrary to law. The contrary to law standard has been further defined in the case of final agency action on a complaint to mean action which is arbitrary and capricious. *In re Federal Election Campaign Act Litigation*, 474 F.Supp. 1044, 1046 (D.D.C.1979); *Hampton v. FEC*, Fed. Elec. Camp. Fin. Guide (CCH) ¶ 9036 (D.D.C.1977). Factors the Court may consider in making its determination include the credibility of the allegation, the nature of the threat posed, the resources available to the agency, and the information available to it, as well as the novelty of the issues involved. *In re Federal Election Campaign Act Litigation, supra.* Where the issue before the Court is whether the agency's failure to act is contrary to law, the Court must determine whether the Commission has acted "expeditiously." § 437g(a)(3)(A).

 The Court is disturbed about the inordinate length of time consumed by this investigation. The matter has moved at an exceedingly slow pace. Were the Court not now presented with executed conciliation agreements with most of the respondents named by Common Cause in its administrative complaints and were not agreements with the remaining state PACs named anticipated almost immediately, the Court would undoubtedly find the conduct of the investigation contrary to law. The agreements, however, resolve, as even plaintiffs concede, all but arguably one of the sixty-nine violations alleged by Common Cause by the statutorily preferred method, that of conciliation.

The Court agrees with the plaintiffs that the Commission had evidence of possible violations of the statute in September, 1978, as demonstrated by the General Counsel's interim reports of that month. The Court does not find, however, the agency's collection of further evidence was an abuse of discretion. Nor is the Commission solely responsible for the time consumed by its investigation. The American Medical Association and other respondents in the administrative proceeding dragged their feet at every conceivable opportunity, requiring for example, on numerous occasions judicial intervention and enforcement of Commission subpoenas, otherwise regular and proper. In addition, while Common Cause first complained of contribution violations by the AMA in October, 1976, it did not avail itself of the judicial review provisions of the statute until the fall of 1978.

Finally, it was not until recently that this matter was in a posture—with cross motions for summary judgment filed—for the Court to resolve it. Had the case been in such a posture earlier, the Court might have reached a different conclusion about the Commission's conduct of the investigation.

As earlier noted, Common Cause's June, 1978 administrative complaint alleged one instance in which AMPAC and two state PACs contributed $5,000, $5,000 and $1,000 respectively to the same candidate for elective office. The Commission reached agreements with AMPAC and the two state PACs and asserts that the agreements resolve that problem and thus the possibility of future recurrence. The Commission, however, has not considered whether the state PACs standing alone are a single political committee for purposes of the contribution limits.

Common Cause conceded at the recent summary judgment hearing that it could point to no other occasion where state PACs have jointly contributed in excess of $5000 to the same candidate. It nonetheless insisted that the issue should be investigated because of its "potential." In exercise of its discretion, the Commission determined not to investigate combined state PAC giv-

ing. It stressed that AMPAC had been a contributor to the alleged excess state PAC donation and also has pointed out that this situation was the only one of its kind included among the sixty-nine violations cited by Common Cause. The Commission also emphasized that there was no evidence that AMPAC and the state PACs with which it had reached conciliation agreements would seek to circumvent the agreements through a state-state subterfuge. In light of this record and representations, the Commission's decision not to investigate combined state PAC giving was not an abuse of discretion or contrary to law.

## Conclusion

The Court concludes that the Commission action on Common Cause's complaints as to AMPAC and those state PACs with whom conciliation agreements have been reached is not contrary to law. The Court also concludes that for the matter to be resolved fully, the Commission must enter signed agreements with the remaining 10 state medical PACs named by Common Cause or file suit to remedy the violations alleged. The Court can find no excuse for further delay as to them. Accordingly, the Court will direct the Commission to file with the Court within 30 days of this date, executed conciliation agreements with those PACs or institute a civil action for relief. Failing that, Common Cause may bring in its own name a civil action to remedy the particular violations alleged. An appropriate order and judgment will be entered.