15 F.3d 1086
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 James L. KEMPER, Plaintiff-Appellant,
v.
MERLE NORMAN COSMETICS, INC., Defendant-Appellee.
 No. 92-55974.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 10, 1993.
Decided Jan. 10, 1994.
 
 Before: CHOY, TANG, and D.W. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 This appeal arises out of James L. Kemper's ("Kemper") antitrust action against Merle Norman, Inc. ("Merle Norman"). Mr. Kemper appeals three final judgments against him and in favor of Merle Norman. The gravamen of Mr. Kemper's appeal is that the conduct of the trial judge so infected his trial that he was denied a fair jury trial.
 
 
 3
 I. Did the trial judge's conduct deny Mr. Kemper a fair trial?
 
 
 4
 Mr. Kemper charges that Judge Hauk's comments during the trial displayed such hostility and bias against him and his counsel that he was denied a fair trial.
 
 
 5
 Litigants are entitled to a trial before a judge who is detached, fair, and impartial. Ward v. Westland Plastics, Inc., 651 F.2d 1266, 1271 (9th Cir.1980). A trial court commits reversible error when it expresses its opinion on an ultimate issue of fact in front of the jury or it argues for one of the parties. Pau v. Yosemite Park and Curry Co., 928 F.2d 880, 885 (9th Cir.1991).
 
 
 6
 A trial judge, however, has the undeniable right to examine witnesses and call the jury's attention to important evidence. Shad v. Dean Witter Reynolds, Inc., 799 F.2d 525, 531 (9th Cir.1986). In order to aid the jury in reaching a just conclusion, it is within the trial court's discretion to call attention to evidence it believes important. Maheu v. Hughes Tool Co., 569 F.2d 459, 471 (9th Cir.1977).
 
 
 7
 Questions by a court indicating skepticism are not improper when the witnesses are permitted to respond "to the district court's expressed concerns to the best of their ability." Sealy, Inc. v. Easy Living, Inc., 743 F.2d 1378, 1383 (9th Cir.1984). A trial court will be reversed for excessive judicial intervention only if the record "disclose[s] actual bias on the part of the trial judge [or] leave[s] the reviewing court with an abiding impression that the judge's remarks and questioning of witnesses projected to the jury an appearance of advocacy or partiality." Warner v. Transamerica Insurance Co., 739 F.2d 1347, 1351 (8th Cir.1984). Generally, isolated comments that relate to counsel's skill rather than good faith or integrity are not prejudicial. See United States v. Singer, 710 F.2d 431 (8th Cir.1983).
 
 
 8
 Mr. Kemper first complains that the judge's comments reflected unfavorably on his trial counsel, two witnesses, and himself. The most egregious of these comments were made before the jury.
 
 
 9
 With respect to counsel, Judge Hauk stated on a number of occasions that counsel was unskilled and unprepared; that counsel's questions or arguments were "crazy"; and that counsel could be held in contempt for pursuing a line of questions in derogation of previous court instructions and for wasting the court's time. As to witnesses, the judge commented that Dr. William Comanor, Mr. Kemper's expert witness, was "from that surfing school up there." During cross-examination of Peter Frank, after plaintiff's counsel noted the evidence proffered indicated that Mr. Kemper was a competent store manager, Judge Hauk retorted: "Oh, yeah? All his losses show that, too!"
 
 
 10
 Finally, as to plaintiff himself, the judge warned Mr. Kemper at one point that he would hold him in contempt for violating a prior ruling that precluded testimony with respect to withdrawal of nearly $40,000,000 in dividends from Merle Norman by Jack B. Nethercutt, Merle Norman's Chairman of the Board. On another occasion, as counsel was attempting to demonstrate harm to Mr. Kemper's store by Merle Norman's activities between 1982 and 1985, the judge commented that Mr. Kemper: "Might have been competent in 1980, but incompetent in '85."
 
 
 11
 Judge Hauk made no secret of his skepticism of Mr. Kemper's case; indeed, during pretrial proceedings he characterized the case as "dinky" and as "smell[ing] to high heavens" [ER at 251.] Regrettably, many of Judge Hauk's comments relating to plaintiff, his counsel, and witnesses were demonstrably made with poor judgment. Nevertheless, Judge Hauk was alert to ways to clarify complex testimony and, by excluding cumulative testimony, condense the examination of witnesses. Witnesses were given opportunities to respond to the judge's questions and comments. Furthermore, criticism of counsel's skill and trial preparedness, although belittling, did not impugn his integrity or the merit of his cause.
 
 
 12
 Plaintiff also focuses on the judge's comments relating to the relevance of certain evidence and issues of fact. Mr. Kemper emphasizes the following occurrences as being the most egregious.
 
 
 13
 The first occurrence relates to Mr. Kemper's testimony that Merle Norman stopped shipping him products in retaliation for filing this law suit. Judge Hawk inquired: "Don't you think they have a right to terminate you?" [RT of June 19, 1992, at 2176.] Mr. Kemper argues that this initial question reveals Judge Hauk's partiality towards Merle Norman. However, the judge's question, when considered in context, merely sought to develop facts and, thus, the court's and the jury's understanding of the facts. As a result of the inquiry, Mr. Kemper explained that his account with Merle Norman was in good standing when Merle Norman stopped shipments of products. This point bolstered Mr. Kemper's claim that Merle Norman ceased the shipments in retaliation for the filing of this suit. Judge Hauk's inquiry, therefore, actually assisted Mr. Kemper in making his point.
 
 
 14
 Next, Mr. Kemper focuses on the judge's statements relating to his testimony that Merle Norman violated the business agreement by placing other studios in close proximity to his own. Judge Hauk asked: "Where do you see a violation of contract? I don't see it. It says they can put a store anywhere they want." [RT June 22, 1992, at 2308.] Once again, however, on review of the record we find that the inquiry merely sought to clarify the evidence and Mr. Kemper's two remaining claims for the court and the jury. His questions and comments arguably were not indicative of his feelings of the case.
 
 
 15
 Mr. Kemper also focuses on Judge Hauk's comments interjected during the testimony of Mr. Frank. Counsel was developing testimony regarding the effect on Merle Norman's studios of its decision not to pay bank loans. Judge Hauk commented: "They don't have to go into any programs they don't want to go into." [RT of June 25, 1992, at 2988.] The comment, considered in context, does not necessarily reveal any significant bias or prejudice. Rather, we are convinced that he merely sought to develop the relevance of the testimony counsel was eliciting.
 
 
 16
 Finally, Mr. Kemper challenges the judge's comments to the jury in relation to his ruling that Mr. Kemper failed, as a matter of law, to prove his unfair competition claim. After reading the court's order disposing of the unfair competition claim, the judge instructed the jury: "Now, you have the two remaining causes of action: breach of contract, breach of implied warranty of good faith and fair dealing. I'll let you stew over that overnight." [Id. at 3083.] Mr. Kemper charges that Judge Hauk's informing the jury that he found no unfair practice also inferred that the jury should find against Mr. Kemper. The inference Mr. Kemper draws from the judge's statement is tenuous. Moreover, after the jury was removed from the courtroom, Mr. Kemper's counsel did not object to the court's statements and, therefore, failed to preserve this contention on appeal.
 
 
 17
 Though Judge Hauk's conduct during the trial reveals a heavy-handed style, as well as an intemperate personality, his comments and questions do not demonstrate such bias or prejudice as to have denied a fair trial and require a reversal in this case.
 
 
 18
 II. Did the trial court abuse its discretion in admitting or excluding evidence?
 
 
 19
 Mr. Kemper challenges a number of the trial court's evidentiary rulings. Evidentiary rulings are reviewed for an abuse of discretion and will not be reversed absent some resulting prejudice. Coursen v. A.H. Robins Co., Inc., 764 F.2d 1329, 1333 (9th Cir.1985). A new trial is only warranted on the basis of an incorrect evidentiary ruling if the ruling substantially prejudiced a party. United States v. 99.66 Acres of Land, 970 F.2d 651, 659 (9th Cir.1992).
 
 
 20
 Mr. Kemper first complains that the district court improperly precluded him from playing a videotaped recording of a speech by Mr. Nethercutt at a Merle Norman convention in 1983. Counsel sought to play the tape for the purpose of impeaching Mr. Nethercutt. The trial court denied the request because Mr. Nethercutt had not yet made a statement that was inconsistent with the tape. Fed.R.Evid. 613(b). The court did not err in doing so. "A basic rule of evidence provides that prior inconsistent statements may be used to impeach the credibility of a witness. As a preliminary matter, however, the court must be persuaded that the statements are indeed inconsistent." United States v. Hale, U.S. 171, 176 (1975). Here, Mr. Kemper fails to demonstrate that Mr. Nethercutt's testimony encompassed statements inconsistent with the tape.
 
 
 21
 Mr. Kemper next complains that the trial court abused its discretion in allowing Merle Norman to inquire into Mr. Kemper's failure to file tax returns during the years relevant to this action. A trial judge has wide latitude in the admission or exclusion of evidence where the question is one of materiality or relevancy. Lies v. Farrell Lines, Inc., 641 F.2d 765, 773 (9th Cir.1981). Where evidence is highly probative and it will not tend to prejudice or confuse the jury, doubt should be resolved in favor of admission. Id. The trial court found Mr. Kemper's failure to file tax returns highly probative with respect to his claims for lost income damages and his credibility. Mr. Kemper fails to cite authority from the record or otherwise to indicate that the trial court's decision constituted an abuse of discretion.
 
 
 22
 Related to this last issue is Mr. Kemper's claim that the court abused its discretion in allowing Merle Norman to read into evidence on cross-examination portions of the magistrate judge's order sanctioning Mr. Kemper and his counsel for wilfully concealing Mr. Kemper's failure to file certain tax returns. Similar to the above, the noted portions of the order were probative of Mr. Kemper's truthfulness. Furthermore, since the order was not admitted into evidence, but only inquired into, the cross-examination comported with Fed.R.Evid. 608(b)'s proscription against the use of extrinsic evidence to prove a specific instance of misconduct. See United States v. Jackson, 882 F.2d 1444 (9th Cir.1989). The court did not err in allowing the cross-examination or in drawing attention to the significance of the order.
 
 
 23
 Mr. Kemper also challenges the trial court's refusal to admit a purported "price survey" prepared by Mr. Kemper's counsel two days before trial, and the limited admission of the "Touche-Ross" report, which the court admitted only for the purpose of refreshing Mr. Kemper's memory of conversations he had with Gary Hollister, former President of Merle Norman. Unfortunately, Mr. Kemper completely fails his obligation to demonstrate how the trial court's decisions prejudiced him.
 
 
 24
 Finally, Mr. Kemper complains that the trial court improperly limited the number of witnesses he could call to testify, the admission of miscellaneous videotapes of Merle Norman conventions, the time allowed for examining witnesses, and the time allowed for opening and closing arguments. Once again, however, he fails to demonstrate how the court's decisions prejudiced him. Moreover, review of the record indicates that these decisions had the proper effect of limiting cumulative and extraneous evidence.
 
 
 25
 III. Did the court err in entering judgment against Mr. Kemper on his claim under Sec. 1 of the Sherman Act?
 
 
 26
 After the jury returned its special verdict finding that Mr. Kemper had failed to establish a relevant product market, the trial court entered partial judgment against Mr. Kemper on his federal antitrust claims. Mr. Kemper challenges the entry of judgment as to his claim under Sec. 1 of the Sherman Act. He asserts, specifically, that a relevant product market need not have been proven. Merle Norman counters, arguing that Mr. Kemper's Sec. 1 claim, cast in the Pretrial Conference Order as an exclusive dealing claim only, required proof of a relevant product market.
 
 
 27
 The record reflects that the trial court's judgment was entered as a matter of law under Rule 50(a), Fed.R.Civ.P. Judgments as a matter of law under Rule 50(a) and (b) are reviewed de novo. See In Re Hawaii Federal Asbestos Cases, 960 F.2d 806, 816 (9th Cir.1992). The reviewing court's role is the same as the district court's. McGonigle v. Combs, 968 F.2d 810, 816 (9th Cir.), cert. dismissed, --- U.S. ----, 113 S.Ct. 399 (1992). "[A] [judgment as a matter of law] is proper when the evidence permits only one reasonable conclusion as to the verdict." Id.
 
 
 28
 The issue that Merle Norman suggests is before us is whether Mr. Kemper stipulated to the requirement that he must prove a relevant product market to succeed on a Sec. 1 claim; that is, whether Mr. Kemper couched his claim as an exclusive dealing claim, which the Pretrial Conference Order reflects, or as an unlawful group boycott or conspiracy. The record reveals, however, that Mr. Kemper consistently objected to Merle Norman's position that his failure to convince the jury of a relevant product market disposed of his Sec. 1 claim. [RT of June 2, 1992, 60-69; RT of June 12, 1992, at 1286-94; SER at 7-15.] Because the trial court accepted Merle Norman's position, Mr. Kemper argues, the court improperly refused to allow him to introduce evidence and testimony through Dr. Comanor of the "adverse effects on competition of Merle Norman precluding independent store owners from selling competitive products sold by Retail Cosmetics Concepts, and others." [Gray Brief at 19.]
 
 
 29
 Mr. Kemper points out that the "failure to pinpoint precisely the relevant market through detailed analysis is not uniformly fatal to a claim under Sherman Act Sec. 1." Oltz v. St. Peter's Community Hosp., 861 F.2d 1440, 1448 (9th Cir.1988). "Because market definition and market power are merely tools designed to uncover competitive harm, proof of 'actual detrimental effects, such as a reduction of output, can obviate the need ... [for] elaborate market analysis." Oltz, 861 F.2d at 1448 (quoting Indiana Fed'n, 476 U.S. at 460-61); see Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd, 924 F.2d 1484, 1489 n. 3 (9th Cir.1991).
 
 
 30
 Merle Norman contends that the cases Mr. Kemper relies on to argue that he need not prove a relevant product market are inapposite. Specifically, Merle Norman argues that each case Mr. Kemper cites involves a horizontal restriction on output or price, whereas the instant case contains no horizontal component. Neither the Supreme Court nor this Circuit has, however, given this distinction any significance in a context similar to Mr. Kemper's case. Further, Merle Norman fails to explain why the distinction it notes is significant. We do not view the cases Mr. Kemper cites as inapposite. We conclude, therefore, that Mr. Kemper need not have proven a relevant product market, as the district court ruled, to proceed on his Sec. 1 claim. Rather, Mr. Kemper could have proceeded on his claim by introducing evidence demonstrating the actual detrimental effects of Merle Norman's activities.
 
 
 31
 The record reveals that the trial court precluded certain testimony and exhibits Mr. Kemper offered as to detrimental effects. Such testimony and exhibits were precluded from admission, however, because of lack of authenticity, foundation, and Mr. Kemper's failure to demonstrate compliance with Fed.R.Evid. 703. Contrary to Mr. Kemper's contention, neither Dr. Comanor's testimony, nor the exhibits he sought to rely upon, were precluded from admission because the court refused to allow evidence of the detrimental effects of Merle Norman's activities. Further, the record is void of objections by Mr. Kemper to these evidentiary rulings. Our review of the record, nevertheless, convinces us that these evidentiary decisions were not abuses of discretion.
 
 
 32
 Moreover, we are convinced the record reveals only scant evidence of detrimental effects not because the trial court improperly excluded such evidence, but because Mr. Kemper failed to introduce sufficient admissible evidence. See Morgan, 924 F.2d at 1489 n. 3. There being a ground supported by the record to affirm the trial court's judgment against Mr. Kemper on his Sec. 1 claim, we deny his instant claim for relief. See United States v. Washington, 969 F.2d 752, 755 (9th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1945 (1993).
 
 
 33
 IV. Did the court err in entering judgment against Mr. Kemper on his CFIL claim?
 
 
 34
 Shortly before the close of evidence, Merle Norman moved for judgment as a matter of law, under Rule 50(a), on Mr. Kemper's remaining state law claim under the California Franchise Investment Law (CFIL). See Cal.Corp.Code Sec. 31000, et seq. The basis for the motion was the state statute of limitations, which mandates that an action shall survive no longer than one year after the plaintiff discovers the facts constituting a violation of Secs. 31101 and 31300 of the CFIL. The trial court granted Merle Norman's motion. Mr. Kemper's challenge of the trial court's decision is unavailing.
 
 
 35
 Mr. Kemper's last remaining CFIL claim alleged that Merle Norman materially "modified" the business agreement, by requiring him to carry only Merle Norman products, without advising him as required under Sec. 31101(c)(2). Mr. Kemper had maintained throughout the action that Merle Norman modified the agreement for the first time in May 1986, when Mr. Nethercutt gave a speech at the Merle Norman convention in Miami. During his testimony, however, Mr. Kemper testified that David Sandberg, an officer of Merle Norman, informed him during the fall of 1982 that he would be in violation of the business agreement if he sold competing products in his studio. The trial court viewed this testimony as evidence that Mr. Kemper knew of the facts constituting the CFIL violation as early as the fall of 1982. Accordingly, the court ruled that the one year statutory period of limitations had run on Mr. Kemper's CFIL claim in the fall of 1983, nearly three years before he filed this action.
 
 
 36
 Mr. Kemper argues that the statute of limitations period did not begin to run until he learned that he had a legal claim against Merle Norman. This is contrary to the statute. Section 31303 states, in part, that no action shall be maintained under Sec. 31300 unless it is brought before "the expiration of one year after the discovery by the plaintiff of the facts constituting the violation." It is the discovery of facts, not their legal significance, that starts Sec. 31303. See Jolly v. Eli Lilly & Co., 245 Cal.Rptr. 658, 663-64 (Cal.1988).
 
 
 37
 V. Did the court err in entering judgment against Mr. Kemper on his equitable state law claim for unfair competition?
 
 
 38
 Mr. Kemper's last claim is that the trial court erred in denying his equitable claim of unfair competition under Sec. 17200 of the California Business and Professions Code.[1] More specifically, he claims that the district court ignored this Court's reasoning in its September 11, 1990, ruling in Merle Norman v. Martin, No. 89-55727, and thus ignored certain relevant evidence.
 
 
 39
 Merle Norman filed the Martin action to pursue a claim for trademark infringement, as well as several state law claims. This Court's September 1990 order in Martin is an unpublished disposition of Merle Norman's appeal of a denial of its motion for preliminary injunction. The order, however, is not an order in the instant case and, therefore, is not law of this case. Furthermore, as a general rule, decisions on preliminary injunctions do not constitute law of the case, thus parties are free to litigate the merits. City of Angoon v. Hodel, 803 F.2d 1016, 1024 n. 4 (9th Cir.1986), cert. denied, 484 U.S. 870 (1987). To the extent Mr. Kemper complains that the district court's decision is contrary to this Court's order in Martin, we deny his request for relief.
 
 
 40
 Mr. Kemper also charges that the district court ignored certain evidence in considering its findings and conclusions relating to the unfair competition claim. Mr. Kemper must show that the trial court's factual findings are clearly erroneous to prevail. We must accept the district court's findings of fact unless upon review we are left with the definite and firm conviction that a mistake has been committed. Sawyer v. Whitley, --- U.S. ----, 112 S.Ct. 2514, 1522 n. 14 (1992).
 
 
 41
 The district court's findings of fact reveal a thorough, specific, and logical balancing of the utility of Merle Norman's conduct with the gravity of the alleged harm to Mr. Kemper. See Motors, Inc., 162 Cal.Rptr. at 546. Consistently noted in the court's findings is Mr. Kemper's failure to prove how certain decisions and practices of Merle Norman harmed him specifically. These findings are supported by the record and compelled the district court's conclusion that there was no unfair business practice under state law. Mr. Kemper fails to show that such findings are clearly erroneous. Accordingly, his claim for relief is denied.
 
 
 42
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The parties stipulated that this claim was one in equity for the court to decide. See Motors, Inc. v. Times-Mirror Co., 162 Cal.Rptr. 543, 546 (1980)