## ALLIANCE FOR DEMOCRACY, et al., Plaintiffs,

v.

## FEDERAL ELECTION COMMISSION, Defendant.

### No. CIV.A. 02–0527 EGS.

United States District Court, District of Columbia.

Sept. 2, 2004.

assumes that Ms. Handler merely stated the wrong date. *See* Def.'s Mot. Ex. 5 at 148.

Brenda Wright, Boston, MA, Daniel Mach, Jenner & Block, Washington, DC, John C. Bonifaz, Boston, MA, Jordan B. Yeager, Boockvar & Yeager, Doylestown, PA, Lisa J. Danetz, Bonita Tenneriello, Boston, MA, for Plaintiffs.

Gregory John Mueller, Washington, DC, for Defendant.

## MEMORANDUM OPINION

SULLIVAN, District Judge.

### I. Introduction

Plaintiffs are the Alliance for Democracy, Hedy Epstein, and Ben Kjelshus. Alliance for Democracy is a non-profit, non-

partisan grassroots organization advocating the full public funding of elections. Compl. ¶ 1. Hedy Epstein and Ben Kjelshus are members of Alliance for Democracy and Missouri voters. *Id.* ¶¶ 2–3. For the purposes of this Memorandum Opinion, Plaintiffs will be collectively referred to as "Alliance." The Federal Election Commission ("FEC" or "Commission") is the independent agency of the United States Government empowered with exclusive jurisdiction to administer, interpret, and enforce the Federal Election Campaign Act of 1971, as amended ("FECA" or "Act"). *See generally* 2 U.S.C. §§ 437c(b)(1), 437d(a) and 437g. Plaintiffs allege that the FEC failed to act or delayed in acting with regard to the FEC's investigation of Ashcroft 2000, the Spirit of America PAC, and Garrett Lott, the treasurer of these political action committees.

## II. Background

The FEC is authorized to institute investigations of possible violations of the FECA. 2 U.S.C. §§ 427g(a)(1) and (2). The FECA permits any person to file a signed, sworn administrative complaint with the FEC alleging a violation of the Act. 2 U.S.C. § 437g(a)(1).

When a complaint is filed, the FEC notifies the respondents named in the administrative complaint, who are then given an opportunity to respond. 2 U.S.C. § 437g(a)(1). After reviewing the complaint and responses, the FEC then prepares a recommendation, addressing whether there is a "reason to believe" a violation of the FECA has occurred. 2 U.S.C. § 437g(a)(2). If the Commission finds that a reason to believe exists, it can proceed to "make an investigation of [the] alleged violation, which may include a field investigation or audit, in accordance with the provisions of [section 437g(a) ]." 2 U.S.C. § 437g(a)(2).

At the conclusion of the investigation, the statute authorizes the FEC's General Counsel to recommend that the Commission vote on whether there is "probable cause to believe" that the Act has been violated. 2 U.S.C. § 427g(a)(3). The General Counsel then prepares a report to the Commission recommending what action should be taken. 11 C.F.R. § 111.16. Upon consideration of the briefs and report, the Commission determines whether or not there is "probable cause to believe" a violation has occurred. 2 U.S.C. § 437g(a)(4)(A)(i). If the Commission finds probable cause to believe that a violation has occurred, the Commission is required to attempt to resolve the matter by "informal method of conference, conciliation, and persuasion, and to enter into a conciliation agreement" with the respondents. 2 U.S.C. § 437g(a)(4)(A)(i). The Commission is required to attempt to reach a conciliation agreement for at least 30 days and not more than 90 days. 2 U.S.C. § 437g(a)(4)(A)(i).

If the Commission is unable to resolve the matter through voluntary conciliation, the Commission may vote to authorize the filing of a de *novo* civil suit in district court to enforce the Act. If the Commission determines that no violation occurred or dismisses the administrative complaint for some other reason, the complainant has an opportunity to seek judicial review of that determination. 2 U.S.C. § 437g(a)(8)(A). Section 437g(a)(8) also allows a party who has filed an administrative complaint with the Commission to seek judicial review in this Court should the Commission "fail to act" on a complaint within 120 days. 2 U.S.C. § 437g(a)(8)(A). If the Court finds that the Commission's dismissal or failure to act was "contrary to law," it may order the Commission to conform to the Court's decision, but must give the agency 30 days to do so. 2 U.S.C. § 437g(a)(8)(C).

On March 8, 2001, Alliance filed an administrative complaint. The Commission processed the complaint and sent notification to the respondents, who filed responses with the Commission. Def.'s Mot. Ex. 1–2. On July 10, 2002, the Office of General Counsel submitted a report recommending that the Commission find "reason to believe" that the respondents violated the Act. *Id.* On July 23, 2002, the Commission decided by a 6 to 0 vote to find "reason to believe" that the Spirit of America PAC and Garrett M. Lott, as treasurer; Ashcroft 2000 and Garrett M. Lott, as treasurer; and another entity violated the Act.

On April 23, 2003, the FEC's Office of General Counsel submitted the General Counsel's Brief to the Commission, recommending that it find probable cause to believe that the Act has been violated by Ashcroft 2000, Spirit of America PAC, and Garrett Lott. On June 5, 2003, respondents filed a joint reply to the FEC's Brief.

On July 2, 2003, the Office of General Counsel provided the Commission with another report recommending again that it find probable cause to believe that the Act had been violated by Ashcroft 2000, Garrett Lott, and Spirit of America PAC, and recommending no further action with respect to any other entity.

The Commission met on July 8, 2003, and requested additional investigation. The General Counsel's Office submitted a supplemental brief on August 25, 2003, and the respondents submitted a reply brief on September 16, 2003. The General Counsel renewed its earlier probable cause recommendation. *Id.* at 15.

On September 30, 2003, the Commission found probable cause to believe that Ashcroft 2000 and its treasurer, Garrett Lott, violated 2 U.S.C. §§ 441a(f) and 434(b). *Id.* at 15–16. The Commission also found probable cause to believe that the Spirit of American PAC and its treasurer, Garrett

Lott, violated 2 U.S.C. §§ 441a(a)(2)(A) and 434(b). *Id.* Following the Commission's probable cause determination, the Commission entered into conciliation negotiations with the respondents. On December 11, 2003, a final conciliation agreement was reached with all of the administrative respondents: Ashcroft 2000, Spirit of America PAC, and Garrett Lott, the treasurer of those political action committees.

In light of these developments, the FEC argues that plaintiffs have succeeded in the purpose of their lawsuit—spurring the FEC into action—and this case should be dismissed. Plaintiffs argue that this case is not moot because, in addition to injunctive relief, plaintiffs seek a Declaratory Judgment stating that the FEC acted unlawfully in its delay.

The FEC's Motion to Dismiss for lack of jurisdiction as well as Alliance's Motion to Compel are currently pending. Because this Court must consider jurisdiction in the first instance, the Motion to Dismiss shall be considered first.

## III. Discussion

### A. Because the Commission has completed its final action, this case is moot.

"Article III, section 2 of the Constitution limits federal courts to deciding 'actual ongoing controversies.'" *21st Century Telesis v. FCC*, 318 F.3d 192, 198 (D.C.Cir. 2003). A federal court has no "power to render advisory opinions [or] ... decide questions that cannot affect the rights of the litigants in the case before them." *National Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C.Cir. 1997). Given the recent events, there is no relief that the Court could provide under 2 U.S.C. § 437g(a)(8)(C) and the FEC has completed the action sought in plaintiffs' complaint.

Title 2 U.S.C. § 437g(a)(8) allows for limited judicial review of whether the Commission's "failure to act" on an administrative complaint is "contrary to law." It appears to this Court that the FEC has completed all the actions delay of which could arguably be found "contrary to law" under 2 U.S.C. § 437g(a)(8). Moreover, the FEC has taken action, so it can no longer be said to have "failed to act." 2 U.S.C. § 437g(a)(8)(C). The only relief authorized by the applicable provision is an order in which "the court may declare ... the failure to act is contrary to law, and may direct the Commission to conform with such a declaration within 30 days." *Id.*

The D.C. Circuit has explained that "[w]hen the FEC's failure to act is contrary to law, we have interpreted § 437g(a)(8)(C) to allow nothing more than an order requiring FEC action." *Perot v. FEC,* 97 F.3d 553, 559 (D.C.Cir.1996). Here, the order the Circuit court speaks of would be nothing more than an order directing the FEC to do what it has already done. The conciliation agreement and closing of the administrative file mark the end of the enforcement process under § 437g(a) and foreclose any possible relief under § 437g(a)(8) based on the FEC's failure to act.

*1. The* Common Cause *and* TRAC *factors further demonstrate that this case is moot.*

Since the inception of this case, plaintiffs have sought to prove that the Commission has unreasonably delayed its consideration of Alliance's administrative complaint. Alliance has argued that the *Common Cause* and *TRAC* factors "provide the legal standard that the Court must apply in reviewing the [FEC's] conduct pursuant to § 437g(a)(8)." Pls.' Reply Mem. in Supp. of Mot. to Hold Summ. J. in abeyance. *See also Common Cause v. FEC,* 489 F.Supp. 738 (D.D.C.1980); *Telecommuni-*cations *Research and Action Center v. FCC,* 750 F.2d 70 (D.C.Cir.1984). However, since the FEC has completed its investigation, these factors no longer apply.

For example, the *Common Cause* factors involve considering the "the resources available to the agency." *Common Cause,* 489 F.Supp. at 744. Since the agency has expended all the resources needed to complete the investigation, this factor is no longer applicable. Similarly, any analysis of the "information available to the [FEC]" is inapplicable when the FEC needs no further information because it has completed its investigation. *Id.* Likewise, the *TRAC* factors do not apply. For example, evaluating the "effect of expediting delayed action on agency activities of a higher competing priority" would be irrelevant since it is no longer possible for the Commission to expedite an already completed investigation. *TRAC,* 750 F.2d at 80.

Plaintiffs argue that the "failure to act" claim does not assess whether the agency was acting reasonably at the moment of judgment, but rather whether the investigation was unreasonably delayed over the course of the administrative proceeding. *See e.g., Democratic Senatorial Campaign Committee v. Federal Election Commission ("DSCC")* Civ. No. 95–0349, slip op. at 4 (D.D.C. April 17, 1996). However, in *Common Cause,* Judge Parker noted that "[w]ere the Court not now presented with executed conciliation agreements ... the Court would undoubtedly find the conduct of the investigation contrary to law." 489 F.Supp. at 744. This Court agrees with Judge Parker's suggestion that the "failure to act" or "delay in acting" cause of action is terminated by a conciliation agreement. Thus, it appears to the Court that the *Common Cause* and *TRAC* factors do not apply when there is no pending administrative complaint.

*2. No exception to the mootness doctrine applies.*

■ The fact that twenty-nine months have passed since this case was filed demonstrates that allegations of unreasonable delay under § 437g(a)(8) can be reviewed by the court before becoming moot. The "capable of repetition yet evading review" doctrine is applicable when:

> two elements combine: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.

*Pharmachemie v. Barr Laboratories, Inc.,* 276 F.3d 627, 633 (D.C.Cir.2002). "The capable of repetition doctrine applies only in exceptional situations, and generally only where the named plaintiffs can make a reasonable showing that [he or she] will again be subjected to the alleged illegality." *Los Angeles v. Lyons,* 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

*a. The challenged action is not too short to be fully litigated.*

■ Plaintiffs argue that § 437g(a)(8)(A) itself anticipates that unlawful delay may occur after as little as 120 days and that courts have found delay for failure to act after as little as five months. *See Citizen for Percy v. FEC,* 1994 WL 6601, *4 (D.D.C.1984). However, it appears to this Court that the 120 day period is of jurisdictional significance and does not bear on whether the agency's alleged failure to act is contrary to law. *Perot,* 97 F.3d at 558. Further, plaintiffs claim that an agency could delay acting on a complaint for months or years, act immediately before adjudication of a "failure to act" lawsuit, and the agency could effectively avoid review. Agency conduct lasting less than two years has been found too short as to evade review. *See Burlington Northern Railroad Co. v. Surface Transportation Bd.,* 75 F.3d 685, 690 (D.C.Cir. 1996).

Cases brought under § 437g(a)(8), however, do not challenge activity that, by its very nature, is short in duration. The D.C. Circuit has determined that some investigations can reasonably take more than two years. *In re Nat'l Congressional Club,* 1984 WL 148396, *1. The applicable statute of limitations provides five years for the FEC to file suit seeking civil penalties. 28 U.S.C. § 2462. Moreover, some § 437g(a)(8) cases have been litigated to conclusion, which makes it unlikely that such cases are inherently, or even likely, to evade review. *Democratic Senatorial Campaign Comm. v. FEC,* 139 F.3d 951 (D.C.Cir.1998); *National Congressional Club v. FEC,* 1984 WL 148396, *1 (D.C.Cir.1984).

Plaintiffs note that in *DSCC II* the district court found unlawful delay even though it explicitly noted that the delay was over and "there had been no showing that the FEC has resumed its lethargy." *Democratic Senatorial Campaign Committee v. FEC ("DSCC")* Civ No. 95–0349, slip op. at 2 (D.D.C. April 17, 1996). While plaintiffs are correct in arguing that the district court ruled that there had been an unlawful delay even though the delay was over, in that case, the administrative review had not concluded, as it has here. In *DSCC,* the court was concerned that the agency could "implement a start-stop approach" depending on whether or not a complaint was pending in court. *DSCC,* slip op. at 19–20. However here, agency action has concluded, so this Court does not share that concern.

*b. There is no reasonable expectation that the same plaintiffs would be subjected to the same action.*

Plaintiffs argue that to qualify for the "capable of repetition yet evading review" exception, plaintiffs need not show with

certainty that they will be injured by delay in future cases, but rather a "reasonable expectation" that their injury could recur. *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975). The Supreme Court has applied the doctrine to "controversies capable of repetition based on expectation that, while reasonable, were hardly demonstrably probable." *Honig v. Doe*, 484 U.S. 305, 318 n. 6, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). The D.C. Circuit has found a reasonable expectation that a party's injury could recur even in circumstances rather unlikely to recur. *See British Caledonian Airways v. Bond*, 665 F.2d 1153, 1158 (D.C.Cir.1981) (on the reoccurrence of an airplane crash). Plaintiff Alliance, an organization that "seeks to expose the large amounts of money spent on political campaigns," argues that it is likely to be engaged in a similar claim in the future.

Defendant notes that, as of the time it filed the Motion to Dismiss, plaintiffs did not have any other complaints pending before the FEC and that the FEC is not likely to be faced again with the extraordinary demands placed on it by the Bipartisan Campaign Reform Act of 2002, which defendant alleges was one of the primary reasons for its initial slowness to respond. Def.'s Mot. to Dismiss at 14.

Moreover, this case is distinguishable from *British Caledonian Airways*. In that case, the Order at issue had been in effect for only five weeks and the D.C. Circuit held that even emergency judicial review would not be likely to provide relief from such a short term Order. 665 F.2d at 1158. Here, where the FEC's administrative proceeding can take years, there is no comparable likelihood of evading review. Moreover, *Weinstein*, the case cited by plaintiffs, states that there must be a "reasonable expectation that the same complaining party would be subjected to the same action again." 423 U.S. at 149, 96 S.Ct. 347.

Plaintiffs argue that in election law controversies, the "capable of review" doctrine does not require that the plaintiffs themselves be likely to suffer from repetition of the challenged conduct. *Honig*, 484 U.S. at 335–6, 108 S.Ct. 592 (Scalia, J. dissenting); *Dunn v. Blumstein*, 405 U.S. 330, 333 n. 2, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972).

However, the rationale of *Dunn* does not apply here because *Dunn* involved a challenge to the fundamental right of voters that was mooted by an election shortly after the lawsuit was filed. In that case, the "capable of repetition yet evading review" exception did apply. Here, this case is not mooted by an election, but rather, it is mooted by the FEC completing its administrative process. The fact that the underlying investigation involved campaign activity does not transform it into a case involving short-term, election-sensitive deadlines.

Plaintiffs point out that FEC's delay could be repeated in future actions by the plaintiffs. *See Honig v. Doe*, 484 U.S. 305, 318, 108 S.Ct. 592, 98 L.Ed.2d 686 n.5 (1988). However, this Court finds that plaintiffs' argument that these same plaintiffs will at some point in the future have a basis to believe that the Act has been violated, again file an administrative complaint, and again claim the FEC unreasonably delayed is far too attenuated. The Supreme Court in *Lujan* found "[s]uch 'some day' intentions—without any descriptions of concrete plans, or indeed even any specifications of when the some day will be" do not support the finding of an Article III injury. *Id.* at 564.

In sum, in order to qualify for the narrow "capable of repetition yet evading review" exception, a plaintiff must be able to show both that the duration of the activity is too short and that the same party would be subjected to actions again. *Pharma-*

*chemie,* 276 F.3d at 633. Since plaintiffs fail on the first prong, the second prong is inconsequential.

## B. This Court lacks jurisdiction to grant Alliance Declaratory Relief

### 1. *Alliance's Request for Declaratory Relief is Moot.*

■ Plaintiffs assert that this case is not moot because the Court possess the ability to issue a declaratory judgment that the FEC acted unlawfully in delaying over forty-one months, as courts have declared that the FEC's delay was unlawful even while noting that the delay is over. *See Democratic Senatorial Campaign Committee v. FEC ("DSCC")* Civ No. 95–0349, slip op. at 2 (D.D.C. April 17, 1996).

"The [Constitution's] requirement of a case or controversy is no less strict when a party is seeking a declaratory judgment than for any other relief." *Federal Express Corp. v. Air Line Pilots Ass'n,* 67 F.3d 961, 963 (D.C.Cir.1995). Whether discussed under the label "standing" or "mootness," the case or controversy requirement "means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Spencer v. Kemna,* 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998).

Plaintiffs assert that regardless of a final resolution, there will still remain an actual, ongoing controversy over the lawfulness of the agency's delay. Pls.' Opp'n. at 14. In *Rose v. Federal Election Commission,* the district court's decision on remand found that "on or before October 4, 1984, the Commission's action on plaintiff's complaint was unreasonably delayed contrary to law" and granted summary judgment for plaintiffs with no apparent injunctive relief. 608 F.Supp. 1, 12 (D.D.C.1984). This declaratory relief was ultimately issued long after the 1984 elec-

tions, even though it is apparent from both the original opinion and the opinion on remand that the Court sought to redress the FEC's failure to act on the 1982 administrative complaint before the 1984 election. *See Rose,* 608 F.Supp. at 7–8 and 10–11.

Here, Alliance's complaint attacks a specific instance of agency inaction but does not allege that the FEC has adopted a policy of delay in processing administrative complaints. *See* Compl. ¶ 14. As noted previously, the FEC has acted as requested in Alliance's complaint. As a general rule, "the mooting of the specific claim moots any claim for declaratory judgment that the specific action was unlawful." *City of Houston v. Department of HUD,* 24 F.3d 1421, 1429 (D.C.Cir.1994).

Far from settling a claim between the parties, a declaratory judgment in this case would amount to nothing more than an advisory pronouncement that the FEC's past conduct was somehow contrary to law. For a case or controversy to exist, however, the relief sought must be capable of redressing the alleged harm. *Iron Arrow Honor Society v. Heckler,* 464 U.S. 67, 70, 104 S.Ct. 373, 78 L.Ed.2d 58 (1983).

The federal courts "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." *Spencer,* 523 U.S. at 18, 118 S.Ct. 978. In the related context of standing, the D.C. Circuit held that a plaintiff who merely seeks a judicial pronouncement that someone violated the FECA fails to satisfy the Constitution's jurisdictional requirements. *Judicial Watch Inc. v. FEC,* 180 F.3d 277, 278 (D.C.Cir.1999). Here, plaintiffs did not even seek a judicial pronouncement that someone violated the FECA. Rather, all plaintiffs seek is a declaration that the FEC took too long to address that question.

If subsequent events have put an end to the controversy, the Constitution's case or controversy requirement for declaratory relief is not satisfied even where there may have been a controversy when the action was commenced. *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969).

Plaintiffs argue that a declaratory judgment is necessary in order to give effect to the enforcement provisions of 2 U.S.C. § 437g(a)(8). Plaintiffs claim that to permit the FEC to avoid judicial review would be to reward its delay. "The deterrent value of the Act's enforcement provisions are substantially undermined, if not completely eviscerated, by the FEC's failure to process administrative complaints in a meaningful time frame." *DSCC*, slip op. at 17. Further, the court in *Rose* stated "the remedial purpose of the federal election laws would be wholly undermined if the FEC were to process complaints before it without any regard to the possible recurrence of a disputed practice in a succeeding election without any resolution of the practice's legality." 608 F.Supp. at 7.

While Alliance alleges that "it would be a travesty" if the Court has no power to decide this case, the fact remains that the federal courts are courts of limited jurisdiction. "The assumption that if respondents have no standing to sue, no one would have standing, is not a real reason to find standing." *Valley Forge Christian College v. Americans United for the Separation of Church and State*, 454 U.S. 464, 489, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). Moreover, *DSCC* and *Rose* both involved ongoing administrative matters. The courts in those cases had no occasion to consider whether they retained jurisdiction after the administrative matter had concluded.

## 2. The Court will withhold discretionary relief.

Plaintiffs posit that the public's interest in effective oversight of the FEC is at stake in this case, which in turn implicates the protection of the democratic process itself. Plaintiffs argue that for this reason, the Court should exercise its discretion to grant declaratory relief.

"[D]iscretionary relief, like all forms of equitable relief, is discretionary." *Penthouse International v. Meese*, 939 F.2d 1011, 1019 (1991). A declaration that the FEC took too long to complete its investigation might bring Alliance subjective pleasure, but it would have no concrete effect on any party. Alliance's alleged injury was that it lacked information about a mailing list transferred from the Spirit of America PAC to Ashcroft 2000. A declaration about the amount of time the Commission took to investigate that matter will yield no information about the mailing list itself or provide any other information useful in voting.

The traditional function of a declaratory judgment is to affect the parties' future conduct by resolving present disputes over legal rights and obligations. *See e.g.*, Senate Comm. on the Judiciary, Declaratory Judgments, S.Rep. No. 1005, at 2 (1934). Here, granting declaratory relief would be contrary to the traditional prospective purpose of declaratory relief.

## C. Alliance lacks standing under Article III.

Plaintiffs argue that the FEC's failure to act has caused the plaintiff an informational injury which is well recognized by case law. *FEC v. Akins*, 524 U.S. 11, 21–22, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998). FECA establishes a right to truthful information regarding campaign contributions and expenditures, and that right adheres

both before and after the election at issue. *See id.* at 21, 118 S.Ct. 1777.

However, it seems apparent to the Court that Alliance has failed to allege an Article III injury because plaintiffs already possess the information they claim to lack. Further, plaintiffs have failed to show how information about the precise value of a mailing list and the date it was transferred could have a concrete effect on plaintiffs' voting in future elections involving different candidates. Plaintiffs have also failed to persuade the Court that future transgressions could be remedied by their present request for declaratory relief stating that the agency's response was unreasonably delayed. "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. of Civ. P. 12(h)(3).

Moreover, under Article III, it is not enough for Alliance to allege that it was injured because the Commission unlawfully delayed the investigation; plaintiffs must show a "discrete injury flowing from" such alleged delay. *Common Cause,* 108 F.3d at 418 (quoting *Lujan* ).

As the D.C. Circuit has explained, "[t]o hold that a plaintiff can establish injury in fact merely by alleging that he has been deprived of the knowledge as to whether a violation of the law has occurred would be tantamount to recognizing a justiciable interest in the enforcement of the law. This we cannot do." *Id.*

Had the agency found no violation and dismissed the complaint, then it seems that plaintiffs may be entitled to the information they seek so that they could determine whether or not to pursue the action further. *See FEC v. Akins,* 524 U.S. 11, 20–22, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998). However, since the process has progressed as specified in the statute, it seems that plaintiffs have received every-

thing they are entitled to under the FECA and this case shall be dismissed.

## D. The Motion to Compel shall be denied as moot.

Because there remains no live controversy between these parties, the Motion to Compel Responses to Requests for Production shall be denied as moot.

## IV. Conclusion

While the FEC's investigation regarding Ashcroft 2000, the Spirit of America PAC, and their treasurer Garrett Lott may not have been as expeditious as plaintiffs desired, the investigation has now been completed and a conciliation agreement has been reached. The FEC has completed its obligations under the FECA and there remains no live controversy between the parties. Thus, this action shall be dismissed.

An appropriate Order and Judgment accompanies this Memorandum Opinion.