Stephen E. STOCKMAN, et al., Plaintiffs,

v.

FEDERAL ELECTION COMMISSION, Defendant.

No. 1:95–CV–1049.

United States District Court, E.D. Texas, Beaumont Division.

Aug. 27, 1996.

---

Kent Morrison Adams, Adams Coffey &
Duesler LLP, Beaumont, TX, for Stephen E.
Stockman, Friends of Steve Stockman, John
Hart, Stockman for Congress.

Richard B. Bader, Stephen E. Hershkow-
itz, Denitta D. Ward, Washington, DC, for
Federal Election Commission.

## MEMORANDUM OPINION

COBB, District Judge.

Before the Court is defendant Federal
Election Commission's (FEC) motion seeking
summary judgment against plaintiffs Ste-
phen E. Stockman; Friends of Steve Stock-
man and John Hart, Treasurer; and Stock-
man for Congress and Stephen E. Stockman,
Treasurer (hereinafter the Plaintiffs) pursu-
ant to Federal Rule of Civil Procedure 56.
Three issues are presented in this motion.
First, do the Plaintiffs have constitutional
standing to petition this Court to compel the
FEC to complete its investigation of Con-
gressman Stephen E. Stockman (Stockman)?
Second, if the Plaintiffs have constitutional
standing, does section 706 of the Administra-
tive Procedure Act (APA), 5 U.S.C. § 706
(section 706) confer subject matter jurisdic-
tion upon this Court to adjudicate this case?
And third, if this Court has subject matter
jurisdiction, should summary judgment be
awarded to the FEC because there is no
genuine issue of material fact on the question

of whether the FEC has acted **unreasonably** in delaying its investigation of Stockman?

The Court has reviewed the parties' written submissions, which include answers to seventeen interrogatories that were drafted by this Court and answered by the FEC under seal. For the reasons given below, the Court will not alter its prior holding that the Plaintiffs had constitutional standing to bring this case and that this Court has subject matter jurisdiction over the matter. However, the Court will **grant** the FEC's motion for summary judgment because the Plaintiffs failed to raise a genuine issue of material fact on the issue of whether the FEC has unreasonably delayed its investigation of Stockman.

### BACKGROUND

This case arose out of events which allegedly transpired before the 1994 Republican primary election to the United States House of Representatives. John LeCour (LeCour) was Stockman's opponent in the 1994 primary. LeCour filed a complaint with the FEC alleging Stockman had violated certain provisions of the Federal Election Campaigns Act (FECA). 2 U.S.C. §§ 431–456. Specifically, LeCour asserted that a newspaper that supported Stockman's candidacy and was published in Stockman's home and campaign headquarters, should have been identified as campaign literature and its advertising revenue reported as campaign contributions.

Stockman eventually won the Republican primary and the general election, defeating incumbent Congressman Jack Brooks. However, the FEC investigation, designated as Matter Under Review 3847 (MUR 3847), is still pending. Stockman seeks injunctive and declaratory relief in this Court preventing the FEC from completing its administrative investigation in MUR 3847 and requiring the FEC to dismiss the MUR.

On June 13, 1996, this Court asserted jurisdiction over the Plaintiffs' charge of unreasonable delay in violation of the Administrative Procedure Act. At that time, the Court ordered the FEC to answer 17 specific interrogatories.[1] The purpose of this request was to gather evidence upon which this Court could determine whether any delay in agency action was unreasonable. The FEC's submission was received on July 10, 1996 and reviewed *in camera* prior to July 16, 1996. The Court notes that while information specifically concerning the MUR remains governed by the confidentiality provisions of the Federal Election Campaigns Act,[2] information relating to general questions about agency resources will be discussed.

### FEC Resources

On June 7, 1996, the FEC had a total of 305 employees, down from approximately 315

---

1. The questions put to the FEC by this Court are as follows:

1. With respect to the complaint at issue, precisely what actions have been taken by the FEC since the complaint was filed and on what dates were those actions taken?
2. Have any interrogatories been drafted or sent to the parties? When?
3. Has the FEC approved any subpoenas? When?
4. What informal requests for information have been made and when? How have they been responded to?
5. What other actions have been taken by the FEC's general counsel or the FEC concerning the complaint?
6. What is the status of agency resources?
7. How many complaints are currently pending?
8. How many investigators does the FEC have?
9. Are there more pressing investigations pending before the FEC?
10. What is the average length of time necessary for a complaint to be investigated?
11. Are the claims made by Mr. LeCour novel or more complicated than those claims made in most complaints?
11a. If so, what makes these issues so new or complex?
12. What would be the effect of expediting this investigation on other agency activities of a competing or higher priority?
13. What types of information concerning the complaint are available to the FEC?
14. Are the respondents being cooperative with the investigation?
15. Is there information that is missing or difficult to locate?
16. Has the complainant or the respondent hindered the investigation in any way?
17. When does the Commission anticipate a final ruling in this matter?

2. Neither the FEC nor Congressman Stockman have waived the confidentiality provisions of the statute.

during Fiscal Year 1995. The Enforcement Division had four Enforcement Teams with a total of eighteen staff attorneys and eight paralegals available to work on enforcement investigations, down from twenty-two staff attorneys and nine paralegals in both June 1994 and June 1995. There is also an Associate General Counsel for Enforcement, four Assistant General Counsels to supervise each Enforcement Team, a special assistant to the Associate General Counsel, five secretaries, and an investigator. The Central Enforcement Docket, which administers cases that are not currently assigned, has a supervisor, one paralegal, and a tracking coordinator.

The Enforcement Division of the Office of General Counsel is responsible for handling virtually all complaint-generated matters, such as this one. The Enforcement Division also has responsibility for all referrals from the FEC's Reports Analysis Division (RAD), as well as for referrals from other agencies. As of July 1, 1996, the Enforcement Division had a total of 210 cases involving 1279 respondents pending. Because of the limitations on FEC resources, only 95 of those cases were assigned to staff on that date.

The FEC's budget in Fiscal Year 1994 was $23,564,000. The FEC experienced a modest increase in its appropriation for Fiscal Year 1995. Although the FEC's budget in 1995 was $27,106,000, in July 1995, Congress rescinded $1,458,000 of the FEC's budget for that year. The FEC effectively experienced a decline in its budget in Fiscal Year 1996. The FEC's budget in Fiscal Year 1996 was $26,521,000, of which $1.5 million dollars was fenced by Congress for computerization initiatives. In addition, during 1996 the FEC experienced cost increases stemming from the standard cost of living adjustments (COLA) to staff salaries, as well as from other inflationary factors. The January 1, 1996, COLA alone resulted in an increase of 2.56% annualized in the agency's salary costs.

The FEC has an Enforcement Priority System, which was implemented on May 1, 1993. The Enforcement Priority System is a comprehensive case management system that focuses the FEC's limited resources on the more significant cases, and, at the same time, is designed to assure that all of the investiga-

tions, once begun, are completed more expeditiously than in the past. The FEC adopted the system to manage a burgeoning caseload involving thousands of respondents and complex financial transactions. The concept of prioritization was predicated on the FEC's acknowledgment that with limited resources, staff simply cannot fully investigate, negotiate settlement, and litigate, if necessary, all potential enforcement cases arising from complaints or referrals from the Reports Analysis Division, Audit Division, or other government agencies. Thus, most cases with ratings indicating they are less significant are recommended for dismissal periodically.

In a further effort to manage and focus its diminishing enforcement resources, the FEC revamped its thresholds and procedures governing what is referred to the Office of General Counsel from its Report Analysis Division. As a result of adjusting the thresholds, the Commission reduced RAD referrals from 201 in the 1992 election cycle to 67 for the 1994 election cycle.

The FEC currently has one investigator. At the time this complaint was filed, the FEC had no investigators. The FEC hired one investigator in June 1994 and a second investigator in July 1994. Since that time, the investigator primarily responsible for this investigation left the FEC. The Office of General Counsel cannot replace that investigator because of budget constraints.

The Enforcement Priority System ensures that the FEC's enforcement resources are focused on the more significant cases. All new cases are rated under the FEC's Enforcement Priority System. During the time this case has been before the FEC, each of the four Enforcement Teams was assigned one or more cases that received higher ratings than this case.

Under the Enforcement Priority System, a mixture of straight-forward cases and more significant cases, usually involving complex issues or transactions and multiple respondents, are activated. The more significant cases usually require in-depth investigations, subpoenas, and depositions. These cases typically involve protracted conciliation negotiations. Cases are not activated until a staff

member has the ability to handle an additional case in his or her workload. *A sampling of cases completed recently by the Commission and rated in the same range as this one required from 3.3 to 4.6 years to conclude.*

## DISCUSSION

### I. Standard of Review

A motion for summary judgment will be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

To oppose a properly supported motion for summary judgment, the nonmoving party "may not rest upon the mere allegations or denials [in its] pleadings, but the [nonmoving] party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In determining the existence of a genuine issue for trial, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. at 2511. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### II. Standing

■ In order to meet the standing requirement of Article III, a plaintiff must demonstrate an injury in fact, which is sufficiently related to the defendant's conduct, and which is likely to be redressed by a favorable decision of this Court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). As the Supreme Court clarified, "When the suit is one challenging government action or inaction, [and] the plaintiff is himself an object of the action (or foregone action) at issue, ... there is ordinarily little question that the action or inaction caused him injury, and that a judgment preventing or requiring the action will redress it." Id. at 561–62, 112 S.Ct. at 2137.

Congress, moreover, "may enact statutes creating rights, the invasion of which creates standing, even though no injury would exist without the statute." *Linda R.S. v. Richard*, 410 U.S. 614, 617 n. 3, 93 S.Ct. 1146, 1148 n. 3, 35 L.Ed.2d 536 (1973). Section 706 expressly enables plaintiffs to petition courts "to compel agency action ... unreasonably delayed." 5 U.S.C. § 706(2). "Agency action" as used in section 706 includes "failure to act." 5 U.S.C. § 551(13); *United States v. Popovich*, 820 F.2d 134 (5th Cir.), *cert. denied*, 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987).

■ Congressman Stockman is the direct object of the FEC investigation at issue. He has a legal interest in a reasonably prompt administrative action protected by section 706. An unreasonable delay in the FEC's investigation would injure the Plaintiffs' section 706 interest, and an order of this Court compelling prompt FEC action will likely redress an alleged violation of section 706. Thus, when the FEC argues that one who is under an FEC investigation does not suffer a legal injury, it conveniently ignores the fact that when the FEC's action is unreasonably delayed, such delay violates the Plaintiffs' section 706 interest in a reasonably prompt administrative investigation.

Any unreasonable delay on the FEC's part would cause the Plaintiffs to suffer a legal injury through the FEC's violation of section 706. Therefore, the Court finds that the Plaintiffs have constitutional standing to bring this suit.

### III. Jurisdiction

■ In a previous opinion pertaining to this matter, this Court has held that section 706 vests it with jurisdiction to review whether FEC is unreasonably delayed, and to compel the FEC to act if unreasonable delay is found. The Court sees no reason to alter its prior holding.[3]

### IV. Unreasonable Delay

Having concluded that the Plaintiffs have standing to bring this case, and that section 706 vests this Court with jurisdiction to adjudicate this matter, this Court must now determine whether the FEC has unreasonably delayed action concerning MUR 3847.

Though section 706 of the APA provides that a reviewing Court shall "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), there is no definitive test as to what constitutes unreasonable delay. Nonetheless, the D.C. Circuit crafted a particularly helpful approach for resolving the issue of unreasonable delay:

> In evaluating a claim of unreasonable delay, six principles provide useful guidance: (1) the time agencies take to make decisions must be governed by a 'rule of reason;' (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is' unreasonably delayed.

*Telecommunications Research and Action Center (TRAC) v. FEC,* 750 F.2d 70, 80 (D.C.Cir.1984) (citations omitted).

■ In addition to factors enumerated in *TRAC,* courts also consider: i) the credibility of the allegations; ii) the nature of the threat posed by the violation and the need for swift action by the FEC; iii) the resources available to the agency and the information available to it; and iv) the novelty of the issues involved. *Common Cause v. FEC,* 489 F.Supp. 738, 744 (D.D.C.1979). This Court, moreover, finds that a comparison of the amount of time which this investigation has taken, with the amounts of time which the FEC required to resolve similar matters in the past, is helpful in deciding whether the FEC acted with reasonable promptness at this juncture.[4]

■ An application of the above-enumerated factors weigh against the finding of unreasonable delay on FEC's part. First, an FEC investigation lasting approximately one year and ten months does not strike the Court as violative of rules of reason. In *Common Cause,* for example, a two-year delay between the filing of a complaint and the resolution of the matter was not held to be unreasonable delay. *Common Cause,* 489 F.Supp. at 740. The resolution of Matters Under Review similar to the one in this case take 3.3 to 4.6 years to complete. The Plaintiffs have not satisfied their burden of showing why this particular matter, while falling below the lower statistical range, is nonetheless unreasonably delayed.

Second, Congress did not provide a timetable within which the FEC must act and does not require for the FEC to act within a

---

3. For further detail, see the previous opinion of this Court concerning this case.

4. The factors considered by this Court are neither exhaustive nor do they form a definitive test. All of the listed factors need not be applicable to find whether unreasonable delay by an agency exists. The enumeration of certain factors by the Court is only meant to organize and categorize certain variables, useful in resolving the difficult factual question posed by section 706.

single election cycle. *See FEC v. Rose*, 806 F.2d 1081, 1092 (D.C.Cir.1986). The Plaintiffs, moreover, failed to show that the FEC did not act within a range of time limits provided in the statute. *See* 2 U.S.C. § 437g.

Third, this Court considers the need for a quick resolution. While this case affects the political process to some degree, this is not a case in which agency delay is intolerable, such as cases where human health and welfare are at risk. *See Rose*, 806 F.2d at 1091–92 n. 17. Again, the Plaintiffs do not meet their burden of showing that this FEC investigation is of such a nature, that anything less than a *quick* resolution will be intolerable.

Fourth, an order from this Court forcing immediate FEC action in this case will divest scarce FEC resources from matters of equal or higher priority. Currently, each FEC enforcement team is assigned to one or more cases with equal or higher priority than this case. Moreover, the staff members assigned to this case are carrying full, varied caseloads. Hence, if this court were to order the FEC to expedite their investigation in this matter, the FEC's ability to meet its statutorily-mandated time constraints in other cases could be jeopardized.

"It is not for the judiciary to ride roughshod over agency procedures or sit as a board of superintendence directing where limited agency resources will be devoted. We are not here to run the agencies." *Rose*, 806 F.2d 1081, 1091 (D.C.Cir.1986). Thus, the Plaintiffs failed to demonstrate why this Court may legitimately and prudentially divert FEC staff resources and hence disrupt other FEC matters in this case.

Fifth, the Court considers what prejudice, if any, results from the delay. Whatever delay there has been in the FEC investigation, caused the Plaintiffs relatively little harm, and, if anything, allowed Stockman more time to campaign for reelection and to perform his duties as Congressman. Furthermore, some of the delay has been helpful to the Plaintiffs as they have repeatedly asked the FEC for extensions of time in which to file documents.[5] As the Court held

in its previous opinion concerning this matter, the Plaintiffs have provided no real evidence of any injury resulting from the delay.

In considering factors other than those enumerated in *TRAC*, this Court is further satisfied that no reasonable fact finder could find that the FEC has delayed this investigation unreasonably. The previous discussion of FEC resources shows that the FEC is understaffed and its employees are overworked. Accordingly, it is not for this Court to interfere with the priority system which the FEC has instituted in order to manage its caseload. This priority system results in less significant cases being recommended for dismissal. Given the complexity of the remaining cases and the low level of agency resources, the Court finds that the delay experienced by the Plaintiffs is not unreasonable.

Turning to the question of whether the issues presented in this case are novel, the Court may only state that based on its *in camera* review of the FEC's submissions, the issues presented by the complaint are novel and will likely require substantially more time to consider than issues which are more frequently investigated.

The balancing of factors which help to resolve the issues of unreasonable delay clearly weighs against the Plaintiffs. Given that cases of the same priority rating as this case take the FEC anywhere from 3.3 to 4.6 years to complete, the Plaintiffs failed to show why any reasonable fact finder would find that an investigation lasting one year and ten months is unreasonably delayed. There is no evidence showing that the time spent to investigate this matter is a product of anything other than excessive demands on a strapped federal agency. Therefore, there remain no issues of material fact to litigate, and the FEC is entitled to judgment as a matter of law.

### Conclusion

For the reasons set forth above, the Court will grant the FEC's motion for summary

---

**5.** Of course, Congressman Stockman has copies of all documents filed by him, and has been

furnished copies of each of the "legal and factual analysis" documents generated by the FEC.

judgment, pursuant to Federal Rule of Civil Procedure 56.